Holly–Anne GEIER, Plaintiff–Appellant,

v.

MEDTRONIC, INC. and David
H. Roberts, Defendants–
Appellees.

No. 96–1324.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1996.

Decided Oct. 29, 1996.

Julian E. Cannell, James W. Springer, and Charles G. Roth (argued), Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, for Plaintiff–Appellant.

Roy G. Davis, Janet L. Jannusch, Keck, Mahin & Cate, Peoria, IL, Jeffrey J. Keyes (argued), Minneapolis, MN, and Jonathan L. Eisenberg, Medtronic, Incorporated, Minneapolis, MN, for Defendants–Apppellees.

Before BAUER, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Holly–Anne Geier, once a sales representative at Medtronic, Inc., was dismissed from work weeks after informing her supervisor David Roberts of her second pregnancy while at Medtronic. She filed a complaint against Medtronic and Roberts which alleged, among other counts, violations of the Pregnancy Discrimination Act and breach of her employment contract. Finding no contract between Roberts and Geier and finding that Roberts is not an employer under Title VII and therefore immune from suit, the district court dismissed the claims against Roberts. At a later date, finding no remaining issues of material fact, the district court dismissed the Title VII claim and contract claim against Medtronic. Geier appeals from these summary judgment orders. We affirm.

I.

■ We review a district court's grant of summary judgment *de novo*. *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir.1995).

We view the record in the light most favorable to the non-moving party—in this instance, Geier—and we accord her the benefit of all reasonable inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995). Where the record presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, we affirm a grant of summary judgment. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We apply the summary judgment standard with especial scrutiny to employment discrimination cases, like the instant case, which often turn on the issues of intent or credibility. *Perdomo*, 67 F.3d at 144; *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir.1995).

We accept the following facts as determined by the district court from the depositions. Holly–Anne Geier worked as a sales representative for Medtronic from September 1988 until she was fired on January 29, 1992. Geier sold neuro-stimulation products. Her basic responsibilities included maintaining sales reports, expense reports, inventory reports and making service calls. She was assigned a monthly referral quota and a monthly revenue quota. Her direct supervisor was David Roberts.

Geier was something less than a model employee. She was late to work and to meetings. Her reports were tardy or missing. She did not return messages. She lied to her supervisor. Her customers complained, and the company lost business. She consistently fell below her set quotas. Her performance produced many oral warnings and six written warnings, dated October 1989, January 1990, January 1990, February 1990, September 1990, and October 1990. She was placed on three-month probations in February 1990 and January 1991.

Geier was married in January 1991. Upon return from her honeymoon, Roberts asked her whether she planned to have a family. Roberts then said to Geier, "Have all the kids you would like—between spring, summer, and fall. I will not work your territory during the winter months." In September

1991, Geier became pregnant, and in early October 1991, she was confined to bed because of problems with her pregnancy. Roberts telephoned Geier at home once or twice a day and instructed her to continue to call her accounts if she wanted to keep her job. Geier made the calls. Geier was admitted to the hospital a week later. Undeterred, Roberts telephoned Geier at the hospital once or twice a day and instructed her to close a deal with a client. Geier again made the calls. On October 23, Geier miscarried. While Geier was at home recovering, Roberts called her early in the morning to say "get out of your G_d d__n bed and call your accounts if you want to keep your f____g job." Geier returned to work less than one week later.

Upon Geier's return, Roberts placed her on a sixty-day probation because of her enduring performance problems. Roberts presented Geier with a written performance improvement plan, which set forth the same quotas as had been established plus a weekly deadline for paper work submission. Her probation notice stated that failure to address performance issues could result in termination. Geier's performance did not improve. Roberts extended her probationary period by thirty days. In mid-January, Geier told Roberts that she was pregnant again. Roberts discharged her at the end of January for poor performance. Geier was replaced by a thirty-three year old woman with a small child.

## II.

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a). In 1978, Congress amended Title VII to extend protection against discrimination to pregnant women: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment purposes." Pub. L.No. 95–555, 92 Stat. 445 (codified as amended at 42 U.S.C. § 2000e(k)). The 1991 Amendments clarified the scope of discrimination prohibited under Title VII: "except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

To prevail on her sex discrimination claim, Geier must show that she was treated differently because of her pregnancy. Geier may make a case of sex discrimination in either of two ways. She may present evidence to show that her termination was a result of intentional discrimination. She may demonstrate discriminatory animus through direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, or—as is more usually the case—by relying on circumstantial evidence, e.g., ambiguous statements or suspicious timing. *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir.1994). Once a plaintiff shows that an employment decision was motivated in part by her pregnancy, the defendant may avoid a finding of liability by proving that it would have made the same decision had the plaintiff not been pregnant. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 245, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989); *Troupe*, 20 F.3d at 737.

Alternatively, Geier could frame her case under the *McDonnell Douglas* approach, which shifts the burden of production to the defendant, once a plaintiff establishes a *prima facie* case of discrimination. To make a *prima facie* case, a plaintiff must show that she was (1) a member of a protected class, (2) qualified for her position and (3) discharged, and (4) that others, similarly situated but not of the protected class, were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Perdomo*, 67 F.3d at 144. Once a prima facie case is established, the defendant must come forward with a legitimate, non-discriminatory reason for

plaintiff's treatment to avoid liability. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (distinguishing burden of proof from burden of production); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Perdomo*, 67 F.3d at 144. The plaintiff then has an opportunity to prove that the proffered explanation is pretextual. We now fit the facts of the instant case into these frameworks.

## A.

■ Geier argues that two instances of boorish behavior on the part of her supervisor David Roberts qualify as direct evidence of discrimination. In January 1991, in the context of discussing Geier's familial plans during a long car trip, Roberts said, "Have all the kids you would like—between spring, summer, and fall. I will not work your territory during the winter months." Arguably, this comment reflects Roberts' reluctance to cover snowy southern Illinois. However, we view it in the light most favorable to Geier—as revealing of Roberts' benighted and bigoted views regarding pregnancy. The comment, while awkward, insensitive and ungenerous, does not rise to the level of direct evidence of discrimination. To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process. *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804–05 (O'Connor, J., concurring); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116 (7th Cir.1992); *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989). Roberts' comment was made a full year prior to Geier's discharge and thus not temporally related to Geier's dismissal. While the remark was made by Geier's supervisor, there is no causal nexus between the remark and decision to discharge. The comment was made in a casual conversation during a long car trip, a setting unrelated to discussions of Geier's repeated work deficiencies, which eventually led to her dismissal.

Further, the comment indicated an unwillingness to accept absences due to child birth in the winter. Geier's second pregnancy would have come to term in August or September. If we accept Roberts' remark as a serious threat or instruction, it would not apply to Geier's pregnancy. The comment, construed in the light most favorable to Geier, cannot meet the requisite temporal or causal criteria.

■ Geier also cites Roberts' excessively insensitive, even unconscionable, behavior surrounding her miscarriage as further evidence of discriminatory animus. Roberts called Geier at home and in the hospital a couple of times a day to order her to call her accounts while she was miscarrying a child. During her short recovery, Roberts called her at seven in the morning to say "get out of your G_d d__n bed and call your accounts if you want to keep your f____g job."

■ The alleged phone calls of Roberts to Geier during this period are reprehensible. However, Geier makes no showing that Roberts' treatment was because of her pregnancy, rather than because she was absent from work. The Pregnancy Discrimination Act does not require that employers make accommodations for their pregnant workers; "[e]mployers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Troupe*, 20 F.3d at 738. "The Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy, but ... not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees, 29 C.F.R. [sec. 1604.10(b) and] App. [to Pt. 604 (EEOC Guidelines on Discrimination Because of Sex: Questions and Answers on the Pregnancy Discrimination Act)],—in which event it would not be ignoring pregnancy after all." *Troupe*, 20 F.3d at 738. Without a showing that Roberts or Medtronic treated employees on bed rest differently than Geier, we can not read discriminatory intent into Roberts' behavior.[1] As we wrote

---

1. Geier does produce evidence that one pregnant co-worker supervised by Roberts received better treatment than she. Human resources provided this co-worker with disability forms and advised

her of Medtronic's pregnancy related policies. Geier received no such information. Roberts, unaware of these procedures, did not advise Geier or the other co-worker of their existence.

in *Troupe,* a plaintiff "would be half way home if she could find one nonpregnant employee" who had been treated dissimilarly. *Id.* at 739. Perhaps no comparison group exists at Medtronic; however, it was incumbent on Geier to raise the impossibility of this evidence to the Court's notice.

In sum, neither instance of Roberts' behavior, viewed in its worst light, establishes discriminatory intent. Accordingly, Geier's bid for recognition under the *Price Waterhouse* test fails as there is no genuine issue as to material fact which could directly prove discrimination.

### B.

■ We now address whether Geier can establish a *prima facie* case under the *McDonnell Douglas* approach. Geier is unable to make two showings required of a *prima facie* case. First, she does not show that she was qualified for her job. Geier was patently not quite up to the task. Appended to Geier's deposition are fifteen documents, including written warnings, probation plans, and performance reviews, detailing her tardiness, untruths, unfinished tasks, quota shortfalls, and lost business. Geier argues that evidence of her incompetency should be discounted because the district court improperly construed it against her on summary judgment. While Geier does call into doubt the substance or occurrence of oral warnings (as is her want at this stage), the two undisputed periods of probation (comprising nine of the twenty-five months she worked), quota shortfalls, and raft of written warnings are adequate documentation of her deficiencies. Geier has not shown the court that she was qualified for her erstwhile job.

Because Roberts was ignorant of the procedures, his failure to advise Geier does not establish discriminatory intent. Further, Geier does not argue that Roberts' failure to advise or accommodate her violated the company's pregnancy related policies in any way.

2. In her brief, Geier mistakenly argues that the statement of contested facts in the pre-trial order bars Medtronic's motion for summary judgment because it established that contested facts exist. Geier misunderstands both the nature of summary judgment and of the statement of contested

■ Geier similarly fails to establish that others who were not in the protected class, i.e., non-pregnant employees, were treated more favorably. Geier submits that co-workers were treated more favorably when they fell short of their quotas; in fact, she asserts, it was normal to fall a bit short of one's quota. However, quotas tell only a portion of the story. Geier does not show that any fellow worker who was such an all-around poor employee as Geier with a similar track record of warning and disciplinary measures was treated more favorably. A comparison between Geier's treatment and the treatment of those who also fell short of the quotas, but otherwise stayed out of trouble, is unenlightening. Geier fails to show that, as a member of a protected class, she was singled out for particularly harsh treatment.

■ Geier has shown only that she was a member of a protected class of pregnant women and that she was fired. On the record before this Court, she has not met the two other requirements of the *prima facie* case. Because we find no genuine issue as to material fact relevant to these unfulfilled requirements, defendants were rightly accorded summary judgment as a matter of law.[2]

### III.

■ Next, we address the disposal of Geier's contract claim on a motion for summary judgment. Geier signed a sales employee agreement which was accompanied by a two-page explanation. The agreement stated that she would not be terminated without 90 days notice "except with reasonable cause." The explanation read, "Medtronic is agreeing to give you at least 90 days notice of termination." Geier contends that the explanation is part of the employment

facts. The statement of contested facts lists propositions to which parties cannot agree to the truth or falsity; it is not a finding that disputed facts are material to the issues before the court or that the case warrants a trial. On summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is accepting Geier's version of the disputed facts. *Associates in Adolescent Psychiatry, S.C. v. Home Life Insurance Co. Of New York,* 729 F.Supp. 1162, 1192 (N.D.Ill.1989), *aff'd,* 941 F.2d 561 (7th Cir.1991).

contract or a modification of it; thus, Medtronic is bound to give 90 days notice in all instances. Geier's argument falls afoul of contract interpretation principles established under Illinois law. We do not consider extrinsic evidence, such as this appended explanation, to interpret a clear and unambiguous contract. *Arrow Master, Inc. v. Unique Forming, Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993). Interpretation of a clear and unambiguous contract—as is this employment contract—is a question of law and thus suitable for summary judgment. *Church v. General Motors Corp.*, 74 F.3d 795, 799 (7th Cir.1996). Thus we interpret the Medtronic–Geier employment contract within its four corners. The contract terms provide that no notice is required when a termination is for cause. Inadequate job performance constitutes cause for employment termination; accordingly, Geier is not entitled to notice. Her contract claim fails and was properly dismissed at summary judgment.

### IV.

█ Lastly, we turn to Geier's attempt to rehabilitate Roberts as a proper defendant. Geier argues that Roberts is an appropriate defendant under Title VII. We have recently addressed this very issue of individual liability under Title VII. In *Williams v. Banning,* we held that a supervisor, in his individual capacity, does not fall within Title VII's definition of employer. 72 F.3d 552, 553 (7th Cir.1995). We reasoned that the term "employer" is a statutory expression of traditional respondeat superior liability. Limits on damages which correspond to the size of the employer reinforce our reading of the statutory scheme. *Id.* Our ruling is seconded by a similar interpretation of "employer" under the Americans with Disabilities Act. *See EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995). We apply consistent principles in the instant case. Roberts, sued in his individual capacity, is merely a supervisor and therefore operates without risk of Title VII personal liability. Avenues of redress do remain for a plaintiff in Geier's stead because the alleged discriminatory act—Geier's dismissal—occurred within the scope of Roberts' authority; thus Medtronic is potentially liable. However, in this instance, the facts do not support Geier's claim against Medtronic.

For these reasons, we AFFIRM the district court's grant of summary judgment.