**Regina SHEEHAN, Plaintiff,**

v.

**DONLEN CORPORATION, Defendant.**

No. 97 C 685.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1997.

Cynthia H. Hyndman, Robert L. Margolis, Robinson Curley & Clayton, P.C., Chicago, IL, for Plaintiff.

David J. Parsons, Frederick L. Schwartz, Allison Despard, Littler Mendelson, P.C., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Regina Sheehan ("Sheehan") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging her employer, defendant Donlen Corporation ("Donlen"), terminated her

due to her gender and pregnancy. Donlen now moves for summary judgment on the grounds that Sheehan has not established a *prima facie* case of gender or pregnancy discrimination and that there are legitimate, non-discriminatory reasons for her discharge. In the alternative, Donlen moves for partial summary judgment with respect to certain damage claims. For the reasons set forth below, the Court denies Donlen's motion.

## I. FACTUAL BACKGROUND

### A. Employment Application.

We draw our version of the facts from the parties' Local Rule 12 submissions. In July 1991, Sheehan submitted a resumé and later filled out an application for employment with Donlen. On the second page of the employment application, above the signature block, there was a clause stating that the information provided by the applicant is true, correct, complete and that any misstatement or omission may result in dismissal. 12(m) ¶ 2. Sheehan signed the two-page application form without completing the employment history section. In large handwriting, someone other than Sheehan wrote the words "see resumé" across the space provided for the applicant's employment history. Sheehan's one-page resumé attached to the job application form contained her name, address, goal, education and employment experience. The employment experience section of Sheehan's resumé listed three positions that she held between 1976 and 1991. 12(m) ex. 1.

Sheehan held two jobs, EMK Incorporated ("EMK") and Illinois Mortgage, that did not appear on her resumé or job application. 12(m) ¶ 3. Donlen management did not previously know about the two jobs. Donlen contends that Sheehan was fired from EMK and Illinois Mortgage and that she intentionally omitted the two jobs from her resumé and employment application. Sheehan counters that she left EMK because she was a "mishire" (she did not have the required background) and left Illinois Mortgage because they were financially unable to keep her. 12(n) ¶¶ 4–6. Sheehan explains that the two jobs that she had in 1987 were not on her resumé because she only included the most significant jobs. Additionally, Sheehan

states that there was no intent to deceive because her resumé listed her job at Hanley Dawson Cadillac ("Hanley") from which she was terminated in 1987.

During Sheehan's initial interview with Donlen, Susan Gutowsky ("Gutowsky"), Donlen's director of administration, never asked Sheehan if she had ever been terminated nor did Sheehan volunteer any information. 12(m) ¶ 9. Donlen does not have a written policy regarding misstatements or omitted information on an application or resumé, nor has it ever investigated, refused to hire, or dismissed anyone who made misstatements or omitted information on an application or resumé. 12(m) ¶ 9.

### B. Employment Prior To First Pregnancy.

Sheehan was hired at Donlen in July 1991, as an account manager in the customer service department. Sheehan worked as an account manager from July 1991 until her first maternity leave in July 1992. On Sheehan's March 6, 1992, mid-year review form, her supervisor, Zeno Wisniewski ("Wisniewski"), wrote that she needed to develop working relationships with associates. During an August 1992 performance appraisal, Wisniewski debriefed Sheehan that she was sometimes tough to deal with but that it was more of a perception than a reality. On a September 17, 1992, performance evaluation, Wisniewski rated Sheehan a 2.6 (2 = above requirements; 3 = meets requirements).

### C. Employment Prior To Second Pregnancy.

When she returned from her first maternity leave in September 1992, Sheehan became an out-of-stock locator in Donlen's purchasing department. 12(m) ¶ 12. As an out-of-stock locator, Sheehan reported to Eileen Marie Kelm ("Kelm"), the purchasing department supervisor, who reported to Brad Miller ("Miller"), Vice–President of Purchasing. 12(n) ¶ 54.

In a September 1993 performance evaluation, Kelm rated Sheehan as meeting or exceeding requirements for all categories but one, teamwork. During the debriefing, Kelm

told Sheehan that she needed to improve her communication. 12(m) ¶ 17; 12(n) ¶ 56. When asked about the comment, Kelm laughed and told Sheehan that she should smile a bit more and try to understand the other employees. 12(n) ¶ 57.

Sheehan had her second child in January 1994, while still employed in the purchasing department. 12(n) ¶ 61. Kelm covered Sheehan's job during Sheehan's second maternity leave. Kelm repeatedly told Sheehan that she did not know how they were going to manage during the leave and that Sheehan should hurry back to work. Kelm also constantly complained to Brad Miller about how difficult it was going to be with Sheehan out of the office. 12(n) ¶ 62.

### D. Third Pregnancy and Termination.

Shortly after Sheehan returned in March from having her second baby, Kelm told her, "if you get pregnant again, I'll invite you to stay home." 12(n) ¶¶ 64, 66. But Sheehan did become pregnant again, very soon after her second child. 12(n) ¶ 67. Sheehan advised Bill Graham (who had replaced Brad Miller as Vice–President of Purchasing) of this pregnancy on June 21, the day she left on a doctor-ordered disability leave due to problems with the pregnancy. 12(n) ¶¶ 42, 63. Sheehan was out on leave for three weeks from June 21 to July 11, 1994. 12(m) ¶ 44. After Sheehan returned from disability leave, Kelm remarked to Sheehan that she was sure Sheehan would not return to Donlen. 12(n) ¶ 69.

On September 13, 1994, Sheehan was terminated. Graham told Sheehan that he was terminating her employment at Donlen because "of your inability to get along with your supervisor and that hopefully this will give you some time to spend at home with your children." 12(n) ¶ 77. The following day when Graham announced Sheehan's termination to her co-workers in the purchasing department, Graham explained that he had done so because of "her attitude and inability to get along with her supervisor; and we felt that this would be a good time for her to spend some time with her family." 12(n) ¶ 78.

Sheehan was never placed on probation nor did she have any indication that she might be fired. 12(n) ¶ 76. It was not until Sheehan filed for unemployment that she learned that anyone at Donlen had problems with her. 12(n) ¶ 60. Two other Donlen employees, Judy Sikora ("Sikora"), who was terminated in 1993, and Heather Moseley ("Moseley"), who was terminated in January 1994, were both first placed on probation. 12(n) ¶ 84.

Earlier in 1994 Graham had fired Tuwanda Sterling ("Sterling"), who was also pregnant. Sheehan and Sterling are the only two employees that Graham fired while at Donlen. 12(n) ¶ 79. Like Sheehan, Sterling was not first placed on probation prior to termination. 12(n) ¶ 84. Sheehan and Sterling were the only two pregnant employees who worked for Graham in 1994. 12(n) ¶ 79. Initially, Sheehan's position was filled with a man and later with a woman with no children. 12(n) ¶ 80.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir. 1993). When reviewing the record on summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmovant. *Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 667 (7th Cir.1995). To avert summary judgment, however, plaintiff must do more than raise " 'some metaphysical doubt as to the material facts.' " *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). A dispute about material fact is genuine only if the evidence presented is

such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A summary judgment proceeding is not a vehicle for the resolution of factual disputes; it is designed to determine whether there is any material dispute of fact that requires a trial. *Id.* In addition, "motions for summary judgment in discrimination cases must be decided with particular care, given the extent to which the merits often turn on questions of credibility and intent." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996).

## III. TITLE VII STANDARD

◼ Title VII makes it "an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a). In 1978, Congress amended Title VII to extend protection to pregnant women. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996). "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment purposes." 42 U.S.C. § 2000e(k). Title VII does not protect a pregnant employee from being fired without good cause; it protects her from being fired because of her pregnancy. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir.1997).

To prevail on her claim, Sheehan must show that she was treated differently because of her pregnancy. Sheehan can establish this either through the "mixed motives" approach or under the *McDonnell Douglas* burden shifting approach. *Geier*, 99 F.3d at 241; *Gleason*, 118 F.3d at 1139–40. The mixed motives approach was codified by Congress in 1991 when it amended Title VII to state that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex [pregnancy], or national origin was a motivat-

ing factor for any employment practice, even though other factors motivated the practice." 42 U.S.C. § 2000e–2(m). Framing her case under the mixed motives approach, Sheehan may demonstrate discriminatory animus through direct evidence (e.g. "an acknowledgment on the part of the employer of discriminatory intent") or by relying on circumstantial evidence (e.g. "ambiguous statements or suspicious timing"). *Geier*, 99 F.3d at 241. If Sheehan can establish that her termination was motivated in part by her pregnancy, Donlen can avoid a finding of liability by showing that the same decision would have been made had she not been pregnant. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989); *Geier*, 99 F.3d at 241.

The alternative method for Sheehan to establish her claim is to utilize the *McDonnell Douglas* burden shifting approach which first requires she establish a *prima facie* case. *Geier*, 99 F.3d at 241. To establish a *prima facie* case of discrimination, Sheehan "must show that she was: (1) a member of a protected class, (2) qualified for her position and (3) discharged, and (4) that others, similarly situated but not of the protected class, were treated more favorably." *Gleason*, 118 F.3d at 1142. To survive summary judgment, Sheehan must establish or create a genuine issue with regard to each of the four elements of the *prima facie* case. *DeLuca v. Winer Indus. Inc.*, 53 F.3d 793, 798 (7th Cir.1995). If Sheehan can establish a *prima facie* case, the burden of production then shifts to Donlen to come forward with a legitimate, non-discriminatory reason for Sheehan's termination. *Geier* at 241–42. Sheehan would then have an opportunity to prove that the proffered explanation is pretextual. *Id.* at 242.

## A. Mixed Motives Analysis.

◼ Sheehan presents facts that are sufficient for a reasonable trier of fact to conclude that Sheehan's termination was motivated, at least in part, by the fact that she was pregnant. "Ambiguous statements or suspicious timing" constitute circumstantial evidence of discriminatory animus. *Geier*, 99 F.3d at 241. Shortly before Sheehan re-

turned from her second maternity leave Kelm told her, "if you get pregnant again, I'll invite you to stay home." 12(n) ¶ 66. Whether this was a threat that Kelm later acted on or an off-hand comment is for a jury to decide. Additionally, a question of fact exists regarding whether Donlen knew that Sheehan was pregnant when they decided to fire her. Donlen now argues that they made the decision to fire Sheehan prior to her leave on June 20. Def.'s Mem.Supp.Summ.J., 10–11. Donlen has previously admitted that the decision to terminate Sheehan was made in August 1994 when there was no doubt that all of her managers knew she was pregnant. 12(n), ex. D, Answer to Interrog. No. 1.

■ "To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision-making process." *Geier,* 99 F.3d at 242 (*citing Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804–05). Sheehan alleges that Graham told her on September 13, 1994, that he was terminating her employment because it would hopefully give her some time to spend at home with her children. 12(n) ¶ 77. The following day when Graham announced Sheehan's termination to her co-workers in the Purchasing Department, Graham explained that he had done so because of her attitude and inability to get along with her supervisor and that it would be a good time for her to spend some time with her family. 12(n) ¶ 78. Graham's comments, contemporaneously made with Sheehan's discharge, whether they reveal the true motivation for her discharge or are an attempt to ameliorate the pain of being fired, create an issue as to whether discriminatory animus was at least part of the decision-making process. Because Sheehan raises an issue from which a jury could reasonably conclude that Donlen fired her, at least in part, due to her pregnancy, Donlen's summary judgment argument fails. The court will nevertheless examine Donlen's motion for summary judgment under the *McDonnell Douglas* framework.

## B. Burden Shifting Analysis.

### 1. Prima Facie Case Analysis.

■ Sheehan can sustain a *prima facie* case because she establishes or creates a

genuine issue with regard to each of the four requirements. Sheehan has established parts one and three of the *prima facie* case: she is a member of a protected class (female and pregnant), and she was discharged. Additionally, Sheehan has established a genuine issue as to the second part of the *prima facie* case, whether she met her employer's legitimate job expectations. Donlen asserts that Sheehan's "specific performance deficiencies" prevent her from arguing that she met the *prima facie* requirement. Def.'s Mem.Supp. Summ.J. at 13. Sheehan argues that she received performance evaluations ranking her as meeting or exceeding standards. This dispute creates a genuine issue with regard to the second element of the *prima facie* case.

Donlen contends that Sheehan cannot establish the fourth requirement of the *prima facie* case that others, similarly situated but not of the protected class, were treated more favorably. Donlen asserts that Sheehan did not identify any similarly situated non-pregnant employee who was treated dissimilarly. Sheehan asserts that Lisa Stewart, Sheehan's co-worker, told Kelm that she thought that the performance matrix was stupid without suffering an adverse employment action. Conversely, Donlen discharged Sheehan after she expressed concerns that the expectations of the employment matrix may have been unrealistic. Sheehan also presents evidence that non-pregnant employees were placed on probation before they were terminated, whereas pregnant employees were not placed on probation. The facts presented by Sheehan establish an issue of fact on the fourth element of the *prima facie* case.

Therefore, because Sheehan can establish an issue for each of the four prongs of the *prima facie* case, the burden of production shifts to Donlen to offer a legitimate reason for firing Sheehan. Sheehan, who retains the burden of proof at all times, then must show that Donlen's proffered reason for her termination is a pretext.

### 2. Pretext Analysis.

■ To survive a motion for summary judgment Sheehan must show that Donlen's

proffered reason for terminating Sheehan was pretextual. Sheehan can establish that Donlen's reason is pretextual by showing that it is "phony". *Gleason*, 118 F.3d at 1143. Donlen contends that Sheehan was fired because she was not able to get along with her supervisor and complained about being put on the performance matrix. First, Sheehan argues that Donlen's proffered reason was pretextual because Kelm never discussed any problems that she had with Sheehan. Sheehan received positive performance evaluations; the only negative comment was laughed off by Kelm. Sheehan also supports her argument that Donlen's reason is a pretext by citing comments made by Donlen's managers. Kelm commented to Sheehan after her second baby that she would invite Sheehan to stay home if she became pregnant again. Additionally, Sheehan contends that Graham commented when firing her that she could now stay home with her children. Because a jury could reasonably conclude from the evidence Sheehan offers that Donlen fired her because she was pregnant with her third child, Donlen's summary judgment argument fails.

## IV. AFTER ACQUIRED EVIDENCE ANALYSIS

■ Donlen asks that even if Sheehan's Title VII claim survives summary judgment that her back pay damages be tolled based upon the "intentional misrepresentations contained within the application and resumé" that she submitted to Donlen. Def.'s Mem. Supp.Summ.J. at 14. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362–63, 115 S.Ct. 879, 886–87, 130 L.Ed.2d 852 (1995). Donlen contends that Sheehan would not have been hired if it was discovered that she did not disclose her position at EMK Incorporation and Illinois Mortgage or, if already hired, that she would have been fired if the omissions were discovered later.

Donlen intimates that Sheehan purposely did not include the two jobs on her resumé or job application because she was terminated from both. Sheehan contends that the two jobs were not included in the resumé because she only listed her major employment since 1973. During Sheehan's interview, Gutowsky did not ask Sheehan if she had ever been terminated nor did Sheehan volunteer any information. 12(m) ¶ 9. Sheehan states that she left EMK because she was a "mis-hire" (she did not have the required background) and left Illinois Mortgage because they were financially unable to keep her. 12(m) ¶ 4. To counter Donlen's implication that Sheehan's omissions were meant to be deceptive, Sheehan points out that she did disclose her job at Hanley from which she was terminated. Finally, although the employment application contains a warning that the information provided by the applicant is true, correct, complete and that any misstatement or omission may result in dismissal, Donlen has never investigated, refused to hire, or dismissed anyone who made misstatements or omitted information on an application or resumé, nor does a written policy exist at Donlen to address such a situation. 12(m) ¶ 9.

Donlen has not established that Sheehan's omissions were of such severity that Sheehan would have been discharged had Donlen learned of them prior to her September 13, 1994, discharge. Therefore Donlen's motion for partial summary judgment with respect to damages fails.

## V. CONCLUSION

Was Regina Sheehan fired because she was pregnant? Would Donlen have fired her once they learned of her prior employment at EMK and Illinois Mortgage? A jury will answer these questions. For the foregoing reasons, Donlen's motion for summary judgment and partial summary judgment is **DENIED**.