Denisha **KEHRER**, Plaintiff,

v.

**CITY OF SPRINGFIELD**, a Municipal Corporation, Jeanne Blackman, Catherine Lawrence, John Mark Smith, Mary Dehen, Gina Marshall, Robert Williams, Frank Natale, and Craig Sim, Defendants.

No. 97–3163–CV.

United States District Court, C.D. Illinois, Springfield Division.

July 18, 2000.

Carl R Draper, Feldman Wasser Draper & Benson, Springfield, IL, Patricia L Hayes, Hayes Law Office, Springfield, IL, for Denisha Kehrer, plaintiff.

Denisha Kehrer, Carlyle, IL, plaintiff pro se.

Robert M. Rogers, Office of Corp. Counsel, Springfield, IL, Theodore R Schullian, City of Springfield, Assistant Corporation Counsel, Springfield, IL, Bradley B Wilson, Springfield, IL, for City of Springfield, defendant.

Robert M. Rogers, Office of Corp. Counsel, Springfield, IL, for Jeanne Blackman, Catherine Lawrence, Gina Marshall, John Mark Smith, Mary Dehen, Robert Williams, Frank Natale, Craig Sim, defendants.

## OPINION

RICHARD MILLS, District Judge.

Denisha Kehrer lied on her application to become a police officer.

She did not report that she had pleaded guilty to retail theft, had a traffic violation, and had been fired for being caught stealing merchandise.

She loses.

Summary judgment for the Defendants.

## FACTS

In January 1994, Plaintiff Denisha Kehrer applied to be a police officer with the City of Springfield. That May, she filed a complaint with the Illinois Department of Human Rights (IDHR) and the United States Equal Employment Opportunity Commission (EEOC) against the City's police department alleging sexually discriminatory hiring practices. On January 20, 1995, the City, its police department, and the Springfield Civil Service Commission entered into a settlement contract. In partial consideration for Kehrer releasing her claims, the City agreed to place Kehrer's name on its list of candidates for police officer positions and hire her under the same terms and conditions of other candidates.

As part of its hiring process, the City required all candidates to complete an initial application. The application asked for a variety of biographical information including a candidate's employment history. It also informed applicants that false statements were sufficient cause for dismissal. In completing her application, Kehrer stated that she had never been discharged from a job even though she had in fact been fired from a job as a Loss Prevention Manager at Famous–Barr for stealing merchandise. Despite this, Kehrer signed a statement at the end of the application which said that all of her answers were true and complete.

In addition to the initial application, the City also required candidates to pass a background investigation and complete a personal history questionnaire. In signing the questionnaire, Kehrer indicated that she made no willful misrepresentations, omissions or false statements and that she understood that any misrepresentations, omissions, false statements or a failure to complete the entire questionnaire would disqualify her from further consideration as a police officer. Part of the City's questionnaire asked candidates to list all

employers over the last ten years and state whether they had been subject to any disciplinary action with respect to their employment. In responding to this, Kehrer did not mention that she worked for Famous–Barr or that Famous–Barr fired her because it caught her stealing merchandise.

After receiving Kehrer's completed personal history questionnaire, the Springfield Civil Service Commission had the police department's Division of Internal Affairs (DIA) perform a routine background check on its behalf. Craig Sims, a lieutenant with the DIA, assigned Sergeant Robert Williams the task of performing Kehrer's background check. Williams contacted one of Kehrer's former employers, the U.S. Department of Justice, and it indicated that it would not rehire Kehrer because she lied to them about having been charged with retail theft. Upon hearing this, Williams and Frank Natale, a fellow officer with the DIA, contacted a Famous–Barr human resources manager who stated that the company fired Kehrer for stealing merchandise. Williams also interviewed Amy Strawn, a social and educational acquaintance of Kehrer's. Strawn told Williams that she interned with Kehrer at the U.S. Marshal's Office and that the two became friends. Strawn, however, had concerns about Kehrer becoming a police officer because she was "not an honest person." In particular, Strawn told Williams that Kehrer falsified time sheets during her U.S. Marshals internship and lied about her retail theft conviction.

In addition to conducting interviews, Williams reviewed records at the Sangamon County Circuit Clerk's Office as part of Kehrer's background check. A review of Kehrer's records showed that she pleaded guilty to retail theft on August 5, 1988. Moreover, there was a record of Kehrer's guilty plea for a September 1996 speeding ticket even though she stated in her questionnaire that she had not been convicted of a traffic violation during the last five years.

On May 13, 1996, the Springfield Civil Service Commission held a regular monthly meeting and Williams reported the information he collected to Commissioners Jeanne Blackman, Katherine Starks–Lawrence, John Mark Smith, Mary Dehen and Larry Jones. Acting Chief Examiner Gina Marshall was also present at the meeting. After considering Williams' report, the Commissioners made an initial decision to remove Kehrer's name from the list of eligible candidates for positions with the Springfield Police Department because she failed to disclose information in her background questionnaire, received unfavorable employment and personal references, and had a criminal conviction. The Commissioners were not given any information about Kehrer having filed IDHR or EEOC complaints against the City at the time they made their decision.

On June 20, 1996, Commissioners Blackman, Starks–Lawrence, Smith and Dehen gave Kehrer a special opportunity to present evidence as to why her name should not be removed from the eligibility list for entry level police officers. After the hearing, those Commissioners made a final determination to remove Kehrer's name from the eligibility list. Furthermore, during Blackman, Starks–Lawrence, Smith, Dehen and Jones' tenure the Springfield Civil Service Commission never certified any candidate, male or female, for a position as an entry level police officer if the candidate's background investigation revealed a failure to disclose information in the background questionnaire, unfavorable employment and personal references, and a criminal conviction.

Kehrer brought suit on May 23, 1997. She alleges two claims under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e. First, she claims that the Defendants engaged in gender discriminating by removing her name from the eligibility list because she is a female. Second, Kehrer asserts that the Defendants refused to hire her in retaliation for her decision to file IDHR and EEOC claims in May 1994. She also alleges an equal protection claim under 42 U.S.C. § 1983.

Specifically, she contends that the City, its police department, and the Springfield Civil Service Commission used agility tests to exclude women from becoming police officers; placed persons in charge of background investigations and candidate screenings who were known to be prejudiced against women; applied different standards and rules for female applicants during civil service hearings; historically failed to maintain hiring, promotion and transfer policies based on objective criteria that were uniformly applied to men and women; perpetuated, condoned and failed to remedy a work environment that is hostile to women; historically retaliated against female job applicants; used background investigations to disqualify female applicants who challenged the agility test; denied females access to information used as a basis to remove female applicants' names from the eligibility list; and denied female applicants a right to a hearing before they were removed from the eligibility list. Finally, Kehrer asserts that the City breached its January 1995 settlement agreement by refusing to hire her and tortiously interfered with her settlement agreement by manufacturing negative information to justify its decision to remove her name from the eligibility list.

Kehrer's attorney withdrew from the case on October 18, 1999, and the Court gave until November 18, 2000, to obtain new counsel. Kehrer moved to extend this deadline and the Court gave her until December 10, 1999, to obtain counsel. She asked for yet another extension on January 19, 2000, but the Court denied her request. The Defendants moved for summary judgment on March 24, 2000. Kehrer did not timely respond, so the Court issued a minute entry directing her to file a response by May 17. The Court specifically informed Kehrer that her [f]ailure to respond may result in the Court deeming [Defendants' Motion For Summary Judgment] confessed. In addition to the Court's minute entry, the Office of the Clerk sent Kehrer a letter telling her that the Defendants filed a dispositive motion

and that her failure to respond could result in the case being terminated without trial. The letter also told Kehrer that she could not simply rely upon the allegations made in her complaint and that the Defendants' allegations would be taken as true if she did not contradict them with affidavits or other documentary evidence. Kehrer never responded.

## STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). When determining whether factual issues exist, a "court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). However, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 479 (7th Cir.1996) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (1986)).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, she "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no 'genuine issue for trial.'" *Id.* Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of [the plaintiff, it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones." *See Tyler v. Runyon,* 70 F.3d 458, 467 (7th Cir.1995) (quotation omitted).

## ANALYSIS

■ In the instant case, the Defendants seek summary judgment on Kehrer's Title VII claims. Title VII prohibits employers from discriminating on the basis of sex. *See* 42 U.S.C. § 2000e–2(a)(1) ("It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex.") A plaintiff can establish a sex discrimination claim in one of two ways. First, she can present enough evidence to demonstrate that her discharge was a result of intentional discrimination. *See Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996). A plaintiff can prove discriminatory intent through either direct evidence, such as an employer's admission, or—as is more often the case—by relying on circumstantial evidence, such as ambiguous statements or suspicious timing. *See Id.*

■ Since Kehrer has not alleged any direct evidence, she must rely on either circumstantial evidence or the burden-shifting method stated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Seventh Circuit recognizes three types of circumstantial evidence of intentional discrimination: (1) a mosaic of suspicious timing, ambiguous statements, behavior or comment towards employees who are members of the protected group, and other such evidence that would support an inference of discriminatory intent; (2)

comparative evidence showing that employees similarly situated to the plaintiff other than in the protected characteristic received systematically better treatment; and (3) evidence that the plaintiff was qualified for and failed to receive the desired treatment, and the employer's stated reason for not awarding the treatment is unworthy of belief. *See Troupe v. May Dept. Stores,* 20 F.3d 734, 736 (7th Cir. 1994).

Kehrer presents no evidence of suspicious timing or ambiguous statements in the instant case. Defendants were aware of Kehrer's gender when she first applied in January 1994. They did not remove her name from the eligibility list until mid–1996 when they discovered several deficiencies in her application. The Defendants never made ambiguous statements to female applicants and Kehrer does not allege any other evidence to support an inference of discrimination. Kehrer also fails to show that the Defendants treated female candidates worse than similarly situated male candidates. She alleges that this is the case, but presents no affidavits, depositions, or other credible evidence to support her assertions.

■ The only remaining avenue by which Kehrer can establish a claim based on circumstantial evidence is to argue pretext. Kehrer, however, submitted no response to the Defendants' claim they removed Kehrer's name from its eligibility list because she failed to disclose information about speeding tickets and disciplinary action employers took against her, had unfavorable personal and professional references, and had been convicted of retail theft. Failure to disclose information is by itself cause for a candidate's disqualification. *See* Rules of the Springfield Civil Service Commission, Rule 28(A)(1), (6) (allowing for rejection of candidates who provide false information or fail to submit pertinent information). Moreover, conviction of retail theft appears to violate the Defendants' moral character requirements. *See* 65 ILCS 5/10–1–7(c). The Defendants, thus, have offered credible reasons

for removing Kehrer's name from their eligibility list. Kehrer's failure to rebut them prevents her from establishing a claim based on circumstantial evidence.

■ Alternatively, Kehrer tries to establish a prima facie case of gender discrimination using the *McDonnell Douglas* burden-shifting approach. Under this model, a plaintiff can establish a prima facie case of discrimination by demonstrating that (1) she was a member of a protected class (i.e., a woman); (2) she was performing to her employer's legitimate expectations; (3) despite her performance, she was discharged; and (4) others, similarly situated but not in the protected class, were treated more favorably. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. If a plaintiff establishes these elements, the burden shifts to the defendant and he must produce a legitimate, non-discriminatory reason for plaintiff's treatment to avoid liability. *See Geier,* 99 F.3d at 241–242. The plaintiff then has the opportunity to demonstrate that the proffered explanation is pretextual. *See Id.* at 242.

■ Kehrer's gender discrimination claim fails under the *McDonnell Douglas* analysis. The combination of her unfavorable personal and professional references, criminal conviction, and failure to include all the information requested in the questionnaire prevents her from establishing that her application met the Defendants' legitimate expectations for police officer candidates. Moreover, Kehrer produced no evidence to cast suspicion on the Defendants' reasons for not hiring her. Accordingly, the Defendants are entitled to summary judgment on Kehrer's gender discrimination claim.

■ In addition to her gender discrimination claim, Kehrer alleges a retaliation claim. Title VII protects against retaliation for complaining about the types of discrimination it prohibits. *See Dey v. Colt Const. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir.1994) (citing 42 U.S.C. § 2000e–

3(a)). Kehrer's retaliation claim alleges that the Defendants refused to hire her because she filed gender discrimination claims against the City in May 1994. She does not have any direct evidence that the Defendants did this, so she proceeds under the *McDonnell Douglas* burden-shifting variant applicable to retaliation claims. *See Dey,* 28 F.3d at 1457.

To establish a prima facie case of retaliation under *McDonnell Douglas,* a plaintiff must show that (1) she engaged in statutorily protected expression by complaining about discrimination that Title VII covers; (2) she suffered an adverse action by the employer; and (3) there is a causal link between the protected expression and the adverse job action. *See Dey,* at *Id.* If a plaintiff establishes these elements, then the defendant has the burden of producing a legitimate, non-discriminatory reason for firing her. *See Id.* If it succeeds in doing so, then the plaintiff has the burden of proving that the defendant's proffered reasons were not true—that they were a mere pretext for retaliating against her. *See Id.*

Even if Kehrer could establish a prima facie case of retaliation, Defendants would be entitled to summary judgment on her claim. The Defendants assert that they fired Kehrer because she failed to disclose information in her background questionnaire, received unfavorable employment and personal references, and had a criminal conviction. These are legitimate, non-discriminatory reasons for removing Kehrer's name from the eligibility list. As such, Kehrer has the burden of showing that these reasons were pretextual. *See Richter v. Hook–SupeRx, Inc.,* 142 F.3d 1024, 1029 (7th Cir.1998) (when an employer articulates legitimate reasons for terminating employee, the employee then has the burden of showing that the proffered reasons were phony). Kehrer offers *nothing* to contradict the Defendants' reasons for refusing to hire her. Therefore, her retaliation claim cannot survive summary judgment.

Kehrer also alleges a § 1983 claim based on the Defendants' supposed violation of her right to equal protection. To state a prima facie claim under the equal protection clause, a plaintiff must demonstrate that (1) she is similarly situated to members of the unprotected class; (2) she was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent. *See Johnson v. City of Fort Wayne,* 91 F.3d 922, 944–45 (7th Cir.1996). Thus, a § 1983 claim of intentional gender discrimination is subject to the same *McDonnell Douglas* burden-shifting analysis as a Title VII claim. *See King v. Board of Regents of the University of Wisconsin System,* 898 F.2d 533, 537 (7th Cir.1990).

As the Seventh Circuit pointed out in *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1398 (7th Cir.1997), it is essential in an equal protection case to be able to point to at least one similarly situated employee who has been treated more favorably than the plaintiff. For Kehrer to do this, she must present evidence of a male candidate whose name was removed from the eligibility list despite unfavorable personal and professional references, a criminal conviction, and a failure to include all the information requested in his questionnaire. While Kehrer alleges this to be the case, she has not presented any affidavits or depositions to support her assertions. Moreover, as was shown in the discussion of Kehrer's Title VII discrimination claim, she has not provided any evidence of the Defendants' discriminatory intent. The Defendants have submitted numerous affidavits which specifically refute Kehrer's claims and she has not even attempted to meet her burden of rebutting them. Accordingly, the Defendants are entitled to summary judgment on Kehrer's equal protection claims.

Once a court determines that a plaintiff cannot avoid summary judgment on her federal claims, it "may decline to exercise supplemental jurisdiction" over her pendent state law claims. 28 U.S.C.

§ 1367(c)(3). Moreover, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994). For this reason, the Court declines to exercise supplemental jurisdiction over Kehrer's state law claims.

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED.

CASE CLOSED.