Gorski v. Corrections                    CV-99-562-JD   07/19/00

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Tara Gorski

    v.                                   Civil No. 99-562-JD
                                     Opinion No. 2000 DNH 156

New Hampshire Department
of Corrections


O R D E R


    Tara Gorski filed suit against her former employer, the New

Hampshire Department of Corrections ("NHDOC"), claiming that she

suffered sexual harassment during her employment.  After NHDOC

filed a motion to dismiss, Gorski filed an amended complaint.

The parties agreed that NHDOC's motion to dismiss would apply to

the amended complaint, and NHDOC filed a supplemental memorandum

in support of its motion.  Gorski objects to the motion.


Standard of Review

    A motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) is one of limited inquiry, focusing not on "whether a

plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims."  Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).  In reviewing the sufficiency

of a complaint, the court accepts "the factual averments

contained in the complaint as true, indulging every reasonable

inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd.</u>
<u>Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992).
In cases involving an alleged violation of a civil right, the
court requires "plaintiffs to outline facts sufficient to convey
specific instances of unlawful discrimination." <u>Dartmouth Review</u>
<u>v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989). Applying
this standard, the court will grant a motion to dismiss "'only if
it clearly appears, according to the facts alleged, that the
plaintiff cannot recover on any viable theory.'" <u>Garita Hotel</u>
<u>Ltd. Partnership</u>, 958 F.2d at 17 (quoting <u>Correa-Martinez v.</u>
<u>Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).


<u>Background</u>[1]

Gorski was employed at NHDOC from 1992 until August of 1998.
In mid June of 1998, Gorski became pregnant. She informed her
supervisors of the pregnancy at some point before July 1, 1998.
Gorski complains of certain comments related to her pregnancy
that were made by her direct supervisor, Lt. Kench, and her
ultimate supervisor, Director Joseph Panarello.

Upon learning of her pregnancy, Panarello said, "Oh Tara,
why did you have to do that? Why did you get pregnant, with

---

[1]Unless otherwise indicated, the facts are taken from
Gorski's amended complaint.

2

everything going on, why do you want another child?" and Kench said, "Oh great, we're going to have to deal with that now." When Gorski subsequently complained about her workload, Kench responded with comments like, "she's just pregnant," "you're only complaining now because you're pregnant," and "it's your hormones." When Gorski requested an internal transfer, Kench denied her request, at least in part because he thought no other unit would accept her, knowing she was pregnant, for fear that she would not return to work after the birth of her child.

Gorski also complains that after going on leave from work, Panarello called her in September of 1998 to ask her if she could come to work, knowing that Gorski was on leave for stress-related reasons. Then, in October of 1998, Panarello went to Gorski's home and pressured her to return to work. Gorski told Panarello that she had problems with Kench, but Panarello took no action. She also complained to the human resources office about both Kench and Panarello, but she claims that NHDOC took no responsive action.

Gorski resigned in August of 1998.[2] She filed a charge with the New Hampshire Commission for Human Rights ("NHCHR") on April

---

[2]In her complaint, Gorski alleges both that she was on leave from her job in September and October of 1998 and that she resigned in August of 1998. She does not explain this apparent discrepancy.

14, 1999.  The Equal Employment Opportunity Commission ("EEOC") issued her a right-to-sue notice on November 10, 1999.  Gorski filed her original complaint with this court on December 6, 1999.

## Discussion

NHDOC moves to dismiss Gorski's amended complaint on the grounds that her lawsuit is untimely and that her allegations fail to state a claim under Title VII.

## I.    Timeliness of Filing

Before a plaintiff may bring suit under Title VII in federal court, she must file a charge with the EEOC or the appropriate state agency.  See 42 U.S.C.A. § 2000e-5 (1994); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 221 (1st Cir. 1996).  This exhaustion requirement is not jurisdictional; rather, it functions like a statute of limitations, and may be excused for equitable reasons.  See Bonilla, 194 F.3d at 278 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).  However, such cases are exceptional, and in general, a plaintiff's failure to adhere to the exhaustion requirement bars her claim from federal court. See id.

4

In states where a plaintiff can file a charge with an authorized state agency, the plaintiff must do so within 300 days of the alleged discrimination. See 42 U.S.C.A. § 2000e-5(e)(1) (1994); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988); Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998). The NHCHR is New Hampshire's authorized state agency for this purpose. See Bergstrom v. University of New Hampshire, 959 F. Supp. 56, 59 (D.N.H. 1996). Therefore, the question in this case is whether Gorski filed her charge with the NHCHR within 300 days of the discriminatory acts she alleged in that charge.[3]

Gorski filed her charge with the NHCHR on April 14, 1999, and the 300th day before that falls on or about June 18, 1998. The comments about which Gorski complains all occurred after she informed her supervisors at NHDOC about her pregnancy. Taking the facts alleged in the amended complaint as true, and indulging all reasonable inferences in Gorski's favor, NHDOC has not shown that the comments were made before June 18, 1998. In fact, it appears that in all likelihood, at least some of the comments were made after that date. Therefore, NHDOC is not entitled to dismissal on this ground.

---

[3]The plaintiff did not attach a copy of the NHCHR charge to her complaint. The court assumes that the conduct alleged in her complaint is the same conduct she included in her charge to the NHCHR.

II.  Sufficiency of Title VII Claim

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a) (1994).  Discrimination on the basis of sex includes discrimination based on pregnancy.  See 42 U.S.C.A. § 2000e(k) (1994).  Sexual harassment constitutes unlawful discrimination on the basis of sex under Title VII.  See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986); Provencher, 145 F.3d at 13.  Gorski alleges that she was sexually harassed because she was subjected to a hostile work environment as a result of her pregnancy.

A claim of sexual harassment due to a hostile work environment requires a showing of severe or pervasive conduct such that it constitutes a change in the terms and conditions of employment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (citing Meritor, 477 U.S. at 67).  Sexual harassment is not measured only in economic terms, and may occur where an abusive working environment exists.  See id.  The work environment must be "both objectively and subjectively offensive,

6

one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 775 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). In deciding whether harassment is actionable under Title VII, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787-88 (quoting Harris, 510 U.S. at 23); see also Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 540 (1st Cir. 1995) (applying Title VII analysis to Title IX case).

The comments allegedly made by Gorski's superiors regarding her pregnancy do not rise to the level required to be actionable under Title VII. "Sporadic use of abusive language" does not create a hostile work environment because such conduct is not "extreme" enough to alter the terms and conditions of employment. Faragher, 524 U.S. at 788. Moreover, the remarks directed at Gorski were not physically threatening or humiliating. While the remarks Panarello and Kench allegedly made were insensitive, inappropriate and arguably offensive, these circumstances alone do not describe a workplace that a "'reasonable person would find hostile or abusive.'" Oncale v. Sundowner Offshore Servs., Inc.,

7

523 U.S. 75, 81 (1998) (quoting <u>Harris</u>, 510 U.S. at 21). As for interference with her work performance, Gorski states in her complaint that she was absent from work on stress-related leave in September and October of 1998, but she does not allege that her stress was caused by her supervisors' conduct.[4]

Furthermore, Panarello's attempts to get Gorski to return to work are not sufficiently linked to her gender or her pregnancy to constitute sexual harassment. <u>See</u> <u>Morrison v. Carleton Woolen Mills, Inc.</u>, 108 F.3d 429, 441 (1st Cir. 1997). Gorski alleges that Panarello pressured her to return to work, knowing she was under doctor's orders not to do so. However, she does not explain the underlying reasons for her absence from work or her stress, and does not connect these conditions to her pregnancy or to her supervisors' behavior. Even if she had left work because of sexual harassment she experienced there, the complaint does not allege facts sufficient to show that Panarello's subsequent behavior was motivated by Gorski's gender or her pregnancy.[5]

---

[4]As noted above, Gorski's claim that she was out on leave in September and October conflicts with her statement that she resigned in August. Her complaint does not allege that her work performance suffered before August.

[5]Gorski claims that she suffered tangible employment actions, making NHDOC strictly liable for sexual harassment. However, as discussed above, Gorski has not alleged sufficient facts to state a claim for sexual harassment. Therefore, the

See id.; Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996).

The only event Gorski alleges that goes beyond verbal remarks is Kench's refusal to grant her transfer request on the basis that no other unit would accept her while she was pregnant. This allegation would be more accurately classified as a claim of pregnancy discrimination rather than sexual harassment, both of which are subsets of discrimination based on sex. It is not clear from the complaint whether Gorski intended to bring a claim based on pregnancy discrimination. However, because Gorski brought suit under Title VII, and because the court considers whether the facts in her complaint would permit recovery under any viable theory, see Garita Hotel Ltd. Partnership, 958 F.2d at 17, the court examines whether Gorski has alleged sufficient facts to state a claim for pregnancy discrimination under Title VII.

To state a claim of discrimination based on disparate treatment, Gorski must establish a prima facie case of discrimination by showing (1) she was pregnant; (2) her job performance was satisfactory; (3) her employer took an adverse

_____

court need not address arguments relevant to vicarious liability.

employment action against her; and (4) other employees who were not pregnant were treated differently.[6] See Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996); Geier, 99 F.3d at 243. Gorski alleges in her complaint that she was pregnant and was otherwise qualified to hold her job. She also alleges that Kench denied her request for an internal transfer because she was pregnant. A refusal to transfer can, in some circumstances, constitute an adverse employment action. See Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) (holding refusal to transfer can be adverse employment action in Title VII retaliation case). While Gorski does not describe the nature of the transfer she requested, or explain how the transfer would have altered the terms and conditions of her employment, her allegations suffice to meet the minimal pleading requirements at this stage of litigation. Likewise, her allegation that Kench explicitly gave her pregnancy as a reason for denying the transfer suffices as an allegation that she was treated differently from other employees who were not pregnant. Therefore, Gorski's allegations as to the denial of her requested transfer state a claim under Title VII.

---

[6]The elements of a Title VII prima facie case depend on the facts of each particular case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973).

10

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 8) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 19, 2000

cc:  Michael J. Sheehan, Esquire
     Nancy J. Smith, Esquire

11