**James MORROW and John Thalacker, Jr., Plaintiffs–Appellants,**

**v.**

**WAL–MART STORES, INC., Defendant–Appellee.**

No. 97–3733.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1998.

Decided July 22, 1998.

Bruce M. Davey (argued), Lawton & Cates, Madison, WI, for Plaintiff–Appellant.

William J. Holloway (argued), Hinshaw & Culbertson, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Wal–Mart Stores, Inc. ("Wal–Mart") fired two male employees, James Morrow and John Thalacker, Jr., for violating the company's policy against sexual harassment. Morrow and Thalacker filed suit under Title VII, see 42 U.S.C. § 2000e–2(a), alleging that Wal–Mart discriminated against them on the basis of sex by enforcing its sexual harassment policy against men and not against women. The district court rejected the plaintiffs' Title VII claims and granted summary judgment to Wal–Mart. The plaintiffs fail to present evidence sufficient to create a genuine issue of material fact as to whether Wal–Mart treated them differently than similarly-situated women, and we therefore affirm.

## I.

John Thalacker worked as an unloader at the Wal–Mart Distribution Center in Menomonie, Wisconsin. James Morrow was employed as a truck driver at the same facility, albeit in a different division. Each man had built a solid work record until separate complaints of alleged sexual harassment came to the attention of Wal–Mart management.

The complaint against Thalacker concerned a photograph of a man's genitals that he had shown to a female co-employee, Tammy Featherly. Featherly told one of her supervisors, Kevin Blodgett, that Thalacker had approached her the day before and asked if she would like to see a picture of his children. When she said yes, Thalacker instead presented her with the photograph of the nude male. Blodgett reported the incident to management personnel, who interviewed Featherly about the incident. Featherly said that she was upset and offended by Thalacker's actions, and she stated that she had done nothing to encourage such behavior. Thalacker was then given an opportunity to present the managers with his side of the story. Thalacker confirmed that he had shown the picture to Featherly, though he expressed surprise that she claimed to be offended. According to Thalacker, his relationship with Featherly often had included mutual exchanges of sexual banter and innuendos, and he maintained that Featherly had laughed at the picture, had asked for a second look, and had made a joke comparing the male model to her own boyfriend. Wal–Mart concluded that Thalacker had violated its policy against sexual harassment[1] and terminated Thalacker's employment the next day.

The complaint against John Morrow involved a comment he made in the presence of a female co-employee, Cindy Nelson, as she was talking to another employee, Don Adams. Morrow allegedly approached the two and said, "Don, unbeknown [sic] to you, while you're talking to her, her little nipples are getting just hard as rocks."[2] Nelson reported this incident to management after several months had passed. Morrow denied ever making the comment, but Don Adams backed up Nelson's account. Morrow was subsequently discharged.

Thalacker and Morrow filed suit in district court against Wal–Mart seeking back wages and benefits, compensatory damages, and reinstatement to their former positions. The complaint alleged that Wal–Mart had discriminated on the basis of sex, in violation of Title VII, see 42 U.S.C. § 2000e–2(a), by firing the two men for conduct in which female employees had also engaged without

---

1. This policy is contained in the Wal–Mart Associates Manual:

   Harassment of any type, whether sexual, ethnic, racial, etc., is not tolerated at Wal–Mart. We want to provide a work environment where everyone is comfortable. If you, or someone you work with, has been a victim of harassment, you should immediately report the offensive conduct to your immediate supervisor or member of the Coaching team. You may also contact your Regional Personnel/Zone Personnel representative.

   You can be sure your report will be thoroughly investigated and appropriate action taken. Confidentiality will be maintained to the extent practical, and no retaliation will be taken against associates who report harassment.

2. The record contains different recollections of the exact wording of Morrow's comment. Since the gist of each version is the same, and each version is equally inappropriate, the exact wording is not material to the issues in this case.

reprisal. In response to Wal–Mart's motion for summary judgment, Thalacker and Morrow pointed to three female employees at the Distribution Center—Tammy Featherly, Marcy Hopp, and Sherry Drinkman—who purportedly had engaged in similar acts of sexual harassment and had gone unpunished by Wal–Mart. The magistrate judge, however, concluded that none of the three women was sufficiently comparable to Morrow and Thalacker, and the court entered summary judgment in favor of Wal–Mart.

## II.

We review an award of summary judgment *de novo,* construing the evidence in the light most favorable to the non-moving party. *See Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 883 (7th Cir.1998). In this case, Wal–Mart had come forward with a facially legitimate, non-discriminatory reason for terminating the plaintiffs: their violation of the company's sexual harassment policy. The magistrate judge, therefore, assumed for the purposes of decision that the plaintiffs had established a prima facie case of sex discrimination under the burden-shifting approach of *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and the court proceeded to consider whether the plaintiffs could show that Wal–Mart's asserted reason for the terminations was pretextual. *See Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1391 (7th Cir.1990) (declining to decide whether the plaintiff had established a prima facie case when it was evident that the plaintiff had failed to demonstrate that the defendant's facially non-discriminatory reasons were pretextual).

To make out a prima facie case of sex discrimination under Title VII, the plaintiffs must show that they were (1) members of a protected class, (2) qualified for their positions, (3) discharged, and (4) that others, similarly situated but not of the protected class, were treated more favorably. *See, e.g., Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Although the magistrate judge analyzed the case in terms of pretext, the court's conclusion that Wal–Mart did not treat similarly-situated female employees more leniently is essentially a finding that the plaintiffs failed to satisfy the fourth element of their prima facie case. Of course, this same inquiry into similarly situated employees has been made at the pretext stage in other cases, *see Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 770 (7th Cir.1994) (considering an attempt to show pretext by demonstrating that "employees outside of the protected class ... who were involved in acts of comparable seriousness ... were nevertheless retained or rehired (while the plaintiff was not)"), and in *McDonnell Douglas* itself, *see* 411 U.S. at 804, 93 S.Ct. 1817 ("Especially relevant to such a showing [of pretext] would be evidence that white employees involved in acts against petitioner of comparable seriousness ... were nevertheless retained or rehired."). Whether couched in terms of establishing a prima facie case or in terms of demonstrating pretext, the inquiry remains the same: The plaintiffs in this case have the burden of showing that similarly-situated female employees—that is, female employees who had been the subject of comparable complaints of sexual harassment—were treated more favorably than the plaintiffs.[3]

---

**3.** Wal–Mart suggests that, even if the plaintiffs could demonstrate inconsistency in the company's enforcement of its sexual harassment policy, this would not necessarily support an inference that the plaintiffs' terminations were discriminatory. Wal–Mart relies on our statement in *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 287 (7th Cir.1997), that "[w]e are not even sure that a single incident where management failed to enforce its own rules rebuts their status as a legitimate business reason for an employee's termination." This comment, however, referred to the proof required to support a theory of discrimina-

tory enforcement of company policies, not the validity of the theory itself as a basis for liability under Title VII. There is no doubt that selective enforcement of company policies against one gender and not the other would constitute sex discrimination under Title VII. *Cf., Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1042 (7th Cir.1993) (noting that, to make out a prima facie case of sex discrimination, a male plaintiff who was terminated for dating a female subordinate "must show that he was treated differently from a similarly situated female ... manager who defied ... an asserted policy against dating").

■ The plaintiffs point first to Tammy Featherly as an example of a similarly-situated female employee who received gentler treatment at the hands of management. Thalacker maintains that Featherly often made crude comments with sexual connotations, and he asserts that he informed management of this fact during the investigation of Featherly's complaint against him. Dan Stanfield, Thalacker's brother-in-law, made similar statements about Featherly to management after Thalacker's termination. Featherly has never been disciplined for this behavior by Wal–Mart. Instead, the company counseled her on the need to set limits in her relationships with her male co-employees.

Wal–Mart contends that it never disciplined Featherly for sexual harassment because, in contrast to Thalacker and Morrow, no complaint was ever lodged against her for specific conduct that a co-employee found to be offensive or harassing. Thalacker did tell management about Featherly's history of off-color banter, but not in the form of a complaint against Featherly. He never reported that Featherly's conduct made him uncomfortable or that he considered it to be harassment. Rather, Thalacker's account was merely an attempt to explain his own belief that Featherly would not be offended by the picture he showed her because she was accustomed to, and engaged in, similar conduct all the time.

Wal–Mart also did not consider Stanfield's statements to be a complaint against Featherly. Stanfield did give management a written statement shortly after Thalacker's termination that describes specific remarks made by Featherly. Although the statement says at one point that "Tammy has said things that have made me [Stanfield] turn red with embarrassment," the statement overall cannot be construed as a complaint of sexual harassment against Featherly. The statement's own language makes it clear that Stanfield's intent was to support Thalacker's contention that he had not violated the company's sexual harassment policy because Featherly could not possibly have been offended by the photograph of the nude. The statement relates that "[b]ecause of the way [Featherly] talks to fellow associates I find it hard to believe that she could have been offended by the picture John showed her. . . . She used the picture and Wal–Mart's policies as a weapon and there is no doubt in my mind that her act against [Thalacker] was malicious." Stanfield's letter was a complaint of sorts—a complaint that Featherly feigned offense, for unknown reasons, in order to get Thalacker in trouble. It does not, however, constitute a complaint of sexual harassment on the part of Featherly comparable to the complaint Featherly made against Thalacker. Although the evidence would support a conclusion that Featherly routinely engaged in behavior of an arguably similar character to that of the plaintiffs,[4] Featherly's conduct never provoked a complaint of sexual harassment that warranted investigation and disciplinary action.

Next, the plaintiffs point to Marcy Hopp, who showed co-workers a photograph of herself reclining on the hood of a car in the nude. Hopp maintains that she revealed the picture by mistake because she failed to realize that the picture was mixed in with other shots from her recent vacation. The inadvertent display of such a photograph is significantly different from both Thalacker's purposeful trick on Featherly and Morrow's deliberate comment to Cindy Nelson. The plaintiffs maintain, however, that Hopp's display was not inadvertent. The plaintiffs came forward with an affidavit from another co-worker, Penelope Larson, who was present during the display and reports that Hopp did not appear embarrassed by the photo-

---

4. At Thalacker's unemployment compensation hearing shortly after his termination, the hearing officer made findings that supported Thalacker's account of Featherly's past history of sexual banter and off-color remarks. The hearing officer also found that Featherly was not credible when she testified at the hearing that she had been offended by Thalacker's conduct in showing her the photograph of the nude male. These administrative findings may indicate that Wal–Mart made an unwise decision in firing Thalacker based solely on Featherly's complaint. None of this is relevant, however, to the issue in the plaintiffs' sex discrimination claim, which is whether Wal–Mart managers received a complaint of sexual harassment by Featherly and failed to act upon it.

graph and that Hopp never told Larson that she had included the photo by mistake. The relevant inquiry, however, is whether Wal–Mart management knew enough about Hopp's behavior to trigger an investigation, and Larson's affidavit does not shed any light on this issue. As evidence that Wal–Mart knew of Hopp's behavior, the plaintiffs rely on the affidavit of Thalacker's sister, Terri Hoover, who avers that Hopp's photographs "were the topic of a lot of discussion among employees." According to Hoover, her manager at the time, Peter Dorman, "was aware of the photos ... because he made a comment to me about them." Hoover also states that "I know that comments were made to management that employees were offended by the nude photographs."

For Hopp's display of the photograph to be comparable to Thalacker and Morrow's situations, the plaintiffs must show that the photograph prompted a complaint of sexual harassment to management. Hoover's affidavit does not suffice to support such an inference. Although Hoover asserts that at least one manager knew of the existence of the photographs, she does not allege that this manager had received a complaint from an employee who felt harassed by Hopp's display. Hoover claims to have knowledge that comments were in fact made to management that employees were offended, but this allegation lacks the specificity required by Rule 56(e) of the Federal Rules of Civil Procedure. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *see also Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878 (7th Cir.1998) (discussing Rule 56's requirement that affidavits contain "substantiating facts" and not mere "conclusory allegations"). Hoover's affidavit does not contain any specifics about who complained, to whom complaints were made, the nature of the complaints, or how she came to have personal knowledge of these complaints. In the absence of specific facts showing that manage-

ment received a complaint of harassment, plaintiffs fail to establish that Hopp's display is comparable to their situations.

■ Last, the plaintiffs argue that Sherry Drinkman is similarly situated. Drinkman is alleged to have shown co-workers a photograph of herself in a revealing thong bikini. The primary support for this contention in the record is the following paragraph from Hoover's affidavit:

> Also prior to termination of John Thalacker's employment there was much discussion among associates with whom I worked about pictures Sherry Drinkman brought to work of herself. The pictures were of Drinkman in a thong bikini. Female associates told me they were offended by the pictures and went to the office and complained. Drinkman's employment was not terminated.

The magistrate judge excluded this evidence as inadmissible hearsay. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). We agree with this assessment. The plaintiffs rely on Hoover's statement to prove that other employees filed complaints about Drinkman's photo and management did nothing. When introduced to prove the proposition that complaints were in fact made, Hoover's statement that other employees told her that they had made such complaints is hearsay. *See* FED.R.EVID. 801(c).

The other evidence in the record relating to Drinkman is the deposition testimony of Jim Swanson, one of the Wal–Mart managers who investigated Featherly's complaint against Thalacker. Swanson relates that, during his investigation of Featherly's complaint, Thalacker told him about a photo that had been circulated of a female Wal–Mart associate in a bathing suit. Swanson did not recall if Thalacker had mentioned the associate's name. More importantly, Swanson never states that Thalacker was complaining that this conduct offended him or was perceived as harassing by him. According to Swanson, Thalacker raised this incident in an attempt to show that his own conduct to-

wards Featherly was par for the course for employees at the Distribution Center. Because there is no evidence of a complaint against Drinkman, the plaintiffs fail to demonstrate that Drinkman was a similarly-situated female employee.

### III.

In sum, we conclude that the plaintiffs have not demonstrated the existence of a genuine issue of material fact regarding their contention that Wal–Mart treated similarly-situated female employees more leniently under the company's sexual harassment policy. Wal–Mart's quick decision to terminate the plaintiffs may seem unfair in a work environment that appears rife with similarly off–color conduct. We have noted time and again, however, that "we do not sit as a super-personnel department that reexamines an entity's business decisions." *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 772 n. 13 (7th Cir.1994) (quotation omitted). Title VII prohibits discriminatory employment actions, not hasty or ill-considered ones. Although some of Wal–Mart's female employees seem to have engaged in questionable behavior, there is no evidence that any of this behavior sparked complaints of harassment like those that Wal–Mart received concerning Thalacker and Morrow. Without evidence of similar employee complaints, Wal–Mart cannot be faulted for failing to respond to these incidents in the same way that it responded to Thalacker and Morrow's situations. We therefore affirm the entry of summary judgment in favor of Wal–Mart.