Hilton **NUNNERY**, Jr., Plaintiff,

v.

**ELGIN JOLIET EASTERN RAILWAY CO., et al., Defendants.**

No. 2:97CV410.

United States District Court,
N.D. Indiana,
Hammond Division.

March 31, 1999.

Jerry Peteet, Gary, IN, for Plaintiff.

Harold Abrahamson, Hammond, IN, Patrick Ritchey, Pittsburgh, PA, for Defendants.

### MEMORANDUM DECISION AND ORDER

SPRINGMANN, United States Magistrate Judge.

In this case, Plaintiff, Hilton Nunnery, Jr., a current employee of Defendant Elgin Joliet & Eastern Railway Co. ("EJ & E"), claims that EJ & E discriminated against him because of his race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and 42 U.S.C. § 1981 by paying him less than a white employee and by not promoting him to a Track Foreman position. EJ & E has moved for summary judgment on all remaining counts of the Complaint and also has moved for attorney's fees and costs. After considering EJ & E Motion, its Brief in Support of its Motion for Summary Judgment, its Reply Brief and its supporting documents, as well as Plaintiff's Opposition to EJ & E's Motion, and for the reasons stated herein, the Court will grant EJ & E's Motion in part and will deny it in part. EJ & E's Motion on Plaintiff's substantive claims will be granted and its Motion for Attorney's Fees and Costs will be denied.

### I. SUMMARY OF THE PROCEEDINGS

Plaintiff filed this lawsuit in December 1997 claiming that EJ & E discriminated against him based on his race in violation of Title VII; the Equal Pay Act; 42 U.S.C. §§ 1981 & 1983; and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The Complaint further attempted to state a claim against Plaintiff's supervisor, Steve Elledge.

On February 6, 1998, Defendants filed a Motion To Dismiss Plaintiff's claims under Section 1983, under the Equal Pay Act, under the U.S. Constitution and against Mr. Elledge. During a March 24, 1998 Telephonic Pretrial Conference, Plaintiff's counsel stated that he did not oppose EJ & E Motion. Accordingly, the Court thereafter granted Defendants' Motion To Dismiss. *See* Order dated March 24, 1998. Therefore, after the Motion to Dismiss, "[t]he claims remaining in this action include alleged race discrimination against EJ & E in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981." *Id.* These are the claims which EJ & E now seeks to have dismissed on summary judgment.

On April 8, 1998, EJ & E took Plaintiff's deposition. During his deposition, Plaintiff admitted:

- that EJ & E followed the applicable collective bargaining agreement ("CBA") and did not violate any employee's seniority rights under the CBA (Deposition of Plaintiff ("Pl.Dep.") at 59–60);
- that the CBA is not discriminatory (*id.* at 96);
- that Plaintiff never filed a grievance under the CBA on the claims he raises in this case (*id.* at 56–60);
- that Plaintiff lacked any previous railroad experience prior to working for EJ & E (*id.* at 12);
- that, under the CBA, employees are hired at 75% of the applicable rate (*id.* at 21–22);
- that other black, white and Hispanic employees with similar experience to Plaintiff's were paid at 75% (*id.* at 19, 21, 26–27);
- that the Track Foreman positions Plaintiff was training for in December 1995 and March 1996 were abolished in accordance with the CBA and that employees of all races were affected (*id.* at 99–101, 113, 115–17); and
- that the only employees given formal in-house Track Foreman training were

provided it four years before Plaintiff began working at EJ & E and no employees were provided such training at the time Plaintiff claims he was denied such training (*id.* at 36, 38–39, 165–66).

Discovery closed September 22, 1998 and EJ & E filed its Motion for Summary Judgment, supporting Brief and supporting documentation on October 22, 1998. Plaintiff filed a Brief in Opposition on December 4, 1998. EJ & E filed a Reply Brief on December 17, 1998.

## II. *THE SUMMARY JUDGMENT STANDARD*

The United States Supreme Court's 1986 trilogy of summary judgment cases reaffirms the vitality and effectiveness of summary judgment as a proper and efficient way of eliminating unfounded discrimination claims without the time and expense of a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This trilogy also emphasizes the importance of summary judgment in the overall scheme of the Federal Rules of Civil Procedure. The Supreme Court stated:

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

477 U.S. at 327, 106 S.Ct. 2548 (citations omitted).

In *Celotex*, the Supreme Court explained that the moving party's burden under Rule 56 is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. A party opposing summary judgment cannot successfully do so by allusion to facts or by reference to the pleadings. *Id.* at 324, 106 S.Ct. 2548. The Supreme Court in *Celotex* stated:

> Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Id.; see also Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir.1983) (affirming summary judgment in discrimination case and stating: "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires . . . specific concrete facts establishing the existence of the truth of the matter asserted.")

Similarly, in *Anderson*, the Supreme Court held that for a plaintiff to survive a motion for summary judgment, he or she must produce sufficient evidence from which the fact-finder could reasonably find for the plaintiff. The Court held:

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. . . . [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### III. *UNDISPUTED MATERIAL FACTS*

Based on the foregoing case law and a review of the record materials submitted in support of summary judgment, the Court finds that the following facts are undisputed.

(1) EJ & E is a Class II Line Haul Common Carrier By Rail. Affidavit of A.L. Reichle ("Reichle Aff.") ¶ 2. EJ & E currently operates approximately 164 route miles of railroad in Illinois and Indiana. *Id.*

(2) Plaintiff is a current EJ & E employee who is a member of the Brotherhood of Maintenance of Way Employees which has a collective bargaining agreement with the EJ & E. *Id.* ¶ 3. The CBA governs the terms and conditions of Plaintiff's employment with EJ & E and contains a detailed grievance procedure to which either party may resort if it believes that the CBA has been violated.[1] *Id.*

(3) On January 3, 1995, EJ & E hired Plaintiff as a track laborer which is a bargaining unit position. Pl.Dep. at 19–20. Plaintiff was one of three laborers that Steve Elledge, Maintenance Supervisor, hired on January 3, 1995 to fill permanent Track Laborer positions. *Id.* at 17, 20.[2]

---

**1.** Plaintiff is not claiming that EJ & E violated any employee's seniority rights under the CBA, has no evidence that the CBA is discriminatory and has never filed a claim under the CBA for the actions that he complains of in this case. Pl.Dep. at 59–60 ("Insofar as seniority goes, you're saying you have no contention that that . . . E.J. & E. violated some-

body's seniority? A. Not to my knowledge" and further explaining that the only grievance he ever filed was regarding overtime (which is not at issue here)), at 96 (explaining he has no knowledge of anything in the CBA that treats blacks different from whites).

**2.** Including Plaintiff, two of the three Track Laborers Plaintiff admits Elledge hired on

(4) Pursuant to the CBA in place in 1995, a newly hired EJ & E employee with no previous relevant experience was hired at 75% of the Track Laborer rate. Reichle Aff. ¶ 4; Pl.Dep. at 21–22 ("I understand that everyone hired would be paid at 75%.").

(5) Under the CBA, the new hire's rate would subsequently increase 5% per 12 months of service through his first 60 months of service (until he reached 100% of the rate for the position).[3] Pl.Dep. at 92–93; CBA, Rule 7 1/2.[4] Likewise, if the employee were promoted or transferred to a different position, the employee would receive the same percentage of the applicable rate for the new position (i.e., a Track Laborer, for example, at 85% of the Track Laborer's rate who was promoted to Track Foreman would receive 85% of the Track Foreman rate). Reichle Aff. ¶ 4. The CBA further provides that EJ & E may start employees with relevant experience at higher than 75% (up to 100%). Id.; CBA Rule 7 1/2.

(6) Plaintiff admits that he lacked previous railroad experience when EJ & E hired him as a Track Laborer. Pl.Dep. at 12.[5] Accordingly, under the terms of the CBA, EJ & E hired Plaintiff at 75% of the Track Laborer rate. Pl.Dep. at 21; CBA Rule 7 1/2. Likewise, consistent with the CBA, when Plaintiff was being trained as a Track Foreman in 1995 and 1996, EJ & E paid him at the applicable percentage of the Track Foreman rate. Pl.Dep. at 87; Reichle Aff. ¶ 5; CBA Rule 7 1/2.

(7) Like Plaintiff, the other two permanent Track Laborers hired along with Plaintiff in January 1995 (Mr. Warren (white) and Mr. Feagin (black)) were paid at 75% of the Track Laborer rate. Pl.Dep. at 21.

(8) Jim DeYoung was hired in April 1995 at 100%. Pl.Dep. at 22–23; Affidavit of Steve Chambers ("Chambers Aff."), ¶ 2. Mr. DeYoung was hired at 100% of the rate because he had extensive qualifications and experience as a welder. Id.

(9) When Plaintiff began working for EJ & E as a Track Laborer in January 1995, he was doing basic laborer work and his supervisor was Mr. Elledge (the same person who had hired him). Affidavit of Steve Elledge ("Elledge Aff."), ¶ 2; Pl. Dep. at 20–21. In April 1995, just four months after Plaintiff was hired, he bid on a Track Foreman position. Pl.Dep. at 29.

(10) Track Foremen supervise gangs of Track Laborers. Chambers Aff. ¶ 3. There are two types of Track Foreman positions—Road Track Foreman and Track Foreman. Id.

(11) The CBA provides that Track Foreman positions are to be bulletined and employees have the opportunity to bid on the positions. See CBA Rule 27. Under the CBA, to determine who should receive a Track Foreman bid, EJ & E determines which (if any) of the bidders is the most senior bidder with the qualifications necessary to be a Track Foreman. Chambers Aff. ¶ 4; CBA Rule 27 ("Making Promotions"). There are three qualifications necessary for a bidder to become a permanent Track Foreman. Id. First, the bidder must be able to read, write and speak English fluently. Id. Second, the bidder must be able to take and release a track warrant.[6] Id. Third, the bidder must meet

January 3, 1995, were black. Pl.Dep. at 19 (explaining Ronnie Warren (white) and Edward Feagin (black) were hired to fill the other two permanent positions).

3. The contract was subsequently renegotiated in 1997 so that employees are paid 90% of the applicable rate their first year of service, 95% the second year and 100% thereafter. Pl.Dep. at 93–94.

4. Relevant CBA Rules were attached to the Reichle Aff. as Exhibit A.

5. Plaintiff's work experience was limited to jobs as a laborer in general construction, doing odd sales and assisting a dentist. Pl.Dep. at 6–12.

6. A track warrant is what gives a gang authority to be on a track at any given time Chambers Aff. ¶ 4.

the requirements of the Federal Railroad Administration Track Safety Standards ("FRA Track Safety Standards"). 49 C.F.R. § 213.7.[7] Chambers Aff. ¶ 4. Under the FRA Track Safety Standards, all Track Foreman must have one year of experience supervising restorations and renewals of railroad track under traffic conditions. 49 C.F.R. § 213.7(a); Chambers Aff. ¶ 4.

(12) If EJ & E was faced with the situation where none of the bidders for a Track Foreman position possessed the one year of supervisory experience required under the FRA Track Safety Standards, EJ & E could either abolish the position or determine whether there were bidders who at least spoke English fluently and were certified to release a track warrant. Chambers Aff. ¶ 5. If there were bidders who met these two minimum requirements, EJ & E was permitted (but not required) to chose the most senior among them to train for the Track Foreman position in order to provide that bidder with experience as a foreman. Id.

(13) Once a person bids on and receives a Track Foreman position, the candidate is permitted to train for the position for 30 work days. Pl.Dep. at 32–33; Reichle Aff. ¶ 6; CBA Rule 29. If a Track Foreman position for which the candidate is training is abolished, when the candidate next receives a Track Foreman position, the 30 work day training period continues from where it left off; the period does not start over. Id. Within seven calendar days after the thirtieth work day, EJ & E may disqualify the candidate from the position. Id. Thus, this qualifying period can span over long periods because it continues until the candidate is disqualified from the position or the 30 work day training period and the seven calendar day period both expire. Id.

(14) Plaintiff attempted to qualify as a Track Foreman beginning in April 1995 and again beginning in November 1995. Plaintiff's Deposition Exhibits ("Pl.Dep.Exhibits") 1, 5, 6, 7 & 8.[8] At the conclusion of both training periods, Plaintiff was disqualified because, *inter alia,* he lacked the one year of supervisory experience required under the FRA Track Safety Standards. Elledge Aff. ¶¶ 5–6.

(15) On April 21, 1995, Plaintiff was awarded a Track Foreman position that was posted in accordance with the CBA. Pl.Dep. at 29; Pl.Dep. Exhibit 1. There were no bidders that met all of the qualifications for this position. Chambers Aff. ¶ 6. Plaintiff, however, was the most senior bidder who spoke English fluently and was certified to release a track warrant. Pl. Dep. at 31; Chambers Aff. ¶ 6. Accordingly, rather than abolish the position because none of the bidders were qualified, EJ & E awarded it to Plaintiff to provide him with experience as a foreman. Id.

(16) Consistent with the CBA, Mr. Elledge disqualified Plaintiff from this Track Foreman position on June 2, 1995. Pl. Dep. Exhibit 2. Mr. Elledge disqualified Plaintiff because he lacked the knowledge and experience required to perform the job and because, as discussed above, he lacked the one year of supervisory experience mandated by the FRA Track Safety Standards to qualify for the position. Elledge Aff. ¶ 5; Pl.Dep. Exhibit 2; Pl.Dep. at 43–44.

(17) On November 10, 1995, Plaintiff bid on and once again was awarded a Track Foreman position that EJ & E posted in accordance with the CBA. Pl.Dep. Exhibit 5. Once again, no bidder had all three qualifications and Plaintiff was the most senior bidder with the minimum qualifications. Chambers Aff. ¶ 8. Although not obligated to do so, EJ & E awarded Plaintiff this bid. Id. Plaintiff began working

---

**7.** A copy of the relevant provisions of FRA Track Safety Standards was attached to the Chambers Aff. as Exhibit A.

**8.** Relevant exhibits from Plaintiff's deposition were attached to the Ritchey Aff. as Exhibit B.

that position a few days later. Pl.Dep. at 97–98.

(18) EJ & E redeploys its track forces in December in anticipation of changing needs during the winter (*i.e.*, additional problems and accidents because of inclement weather). Chambers Aff. ¶ 8; Pl.Dep. at 99–100 ("I've seen them adjust the workforce in the winter months."). Under the CBA, to change shifts, EJ & E must abolish positions (*i.e.*, 11 p.m. to 7 a.m. shift position) and then rebulletin new positions for the new shifts. Pl.Dep. at 113; Chambers Aff. ¶ 8. On December 8, 1995, as a result of winter shift changes, Plaintiff's Track Foreman position was abolished along with the positions of various other white, black and Hispanic employees. Pl.Dep. at 99, 100–101; Pl.Dep. Exhibit 6 (December 1, 1995 Bulletin Order abolishing seven positions, including Plaintiff's Track Foreman position, effective December 8, 1995).

(19) On December 8, 1995, new Track Foreman positions were re-bulletined for different shift times, in accordance with the CBA. Pl.Dep. at 101–02. Plaintiff bid on three different positions. Pl.Dep. Exhibit 6 (December 8, 1995 Track Foreman bid awards). Consistent with the CBA, however, those three positions were awarded to the three most senior bidders with the minimum qualifications to be Track Foreman—Mr. Flores (Hispanic); Mr. Malia (white) and Mr. Vargas (Hispanic). Pl.Dep. at 66–69, 102. (stating: "The only thing I can assume, if the Company went along with the Collective Bargaining Agreement and they didn't discriminate, it was someone who had more seniority than me and had the qualifications. That's the only thing that I can assume.")

(20) On March 8, 1996, Plaintiff bid on a Track Foreman position, received it and, therefore, was permitted to continue his training from December 1995. Pl.Dep. Exhibit 7. Again, Plaintiff received the bid because there were no bidders with the supervisory experience mandated by the FRA Track Safety Standards and he was the most senior bidder with the two minimum requirements for the position. Chambers Aff. ¶ 9. Plaintiff's position was again abolished (along with the foreman positions of five other employees who were white, black and Hispanic) because EJ & E moved back to its spring and summer shifts. *Id.* Pl.Dep. at 115–17 (stating, *inter alia*, "Q. Do you remember what the change was that occurred at this period of time? A. I believe they were changing shifts again."). Pl.Dep. Exhibit 8.

(21) On March 26, 1996, EJ & E rebulletined Track Foreman positions in accordance with the CBA. Pl.Dep. Exhibit 8. Plaintiff bid on one of the positions but none of the bidders had all of the requirements for the position Plaintiff bid on. Chambers Aff. ¶ 10. Plaintiff, however, was the most senior candidate that spoke English fluently and was certified to release a track warrant. Id. Therefore, he again was allowed to train as a Track Foreman. Id.; Pl.Dep. Exhibit 8. Plaintiff trained in that position until he was disqualified on March 29, 1996, which was within seven calendar days of Plaintiff's thirtieth work day of training as a Track Foreman—March 24, 1996. Pl.Dep. at 117; Reichle Aff. ¶ 7. Mr. Elledge disqualified Plaintiff because Plaintiff still lacked a full year of supervisory experience mandated by the FRA Track Safety Standards and because he lacked the experience and knowledge to qualify for the position. Elledge Aff. ¶ 6.

(22) On June 2, 1995, only two employees, Plaintiff and Jeffry Sabor, bid on a Road Track Foreman position. Reichle Aff. ¶ 9; June 2, 1995 Bulletin.[9] EJ & E awarded Sabor the Road Track Foreman position because he was the most senior candidate with all of the qualifications for the position. Chambers Aff. ¶ 7. Prior to working for EJ & E, Sabor worked for another railroad as an FRA Track Safety Standards qualified Track Foreman. *Id.* Therefore, unlike Plaintiff who lacked any prior railroad experience (Pl.Dep. at 12),

---

**9.** The June 2, 1995 Bulletin was attached to the Reichle Aff. as Exhibit B.

Sabor had all of the necessary qualifications for the position. Chambers Aff. ¶ 7.

(23) Plaintiff claims that Earl Malia, Doug Hilley and Tony Flores were provided formal in-house Track Foreman training and he was not given such training.[10] Pl.Dep. at 35. EJ & E provided Mr. Malia, Mr. Hilley and Mr. Flores with formal in-house Track Foreman training in 1990 and 1992—years before Plaintiff began working at EJ & E. Chambers Aff. ¶ 11; Pl.Dep. at 36 (stating they were trained "[p]robably four years before I got there, yes."), 38. No employees with comparable seniority to Plaintiff were provided formal in-house Track Foreman training. Chambers Aff. ¶ 11; Pl.Dep. at 39, 165–66. In fact, EJ & E stopped offering such Track Foreman training after 1992. Chambers Aff. ¶ 11. Therefore, since Plaintiff has worked at EJ & E, no employees have been provided formal in-house Track Foreman training. *Id.*

## IV. *DISCUSSION*

### A. *The Standard of Review.*

 In disparate treatment race discrimination cases, under either Title VII or Section 1981, the plaintiff initially has the burden of demonstrating that the *prima facie* elements of racial discrimination are presented by the underlying facts. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1266 n. 7 (7th Cir.1993) ("It is well settled in this circuit that the methods and order of proof applicable to Section 1981 and Title VII claims are identical.") Therefore, to establish a *prima facie* case of racial discrimination, plaintiff must show:

(1) that he is within a protected class;

(2) that he was subject to an adverse employment action;

(3) that he was qualified; and

(4) that he was treated less favorably than another employee outside the protected class.

**10.** Mr. Flores is Hispanic. Pl.Dep. at 39.

*McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Morrow v. Wal–Mart Stores, Inc.,* 152 F.3d 559, 561 (7th Cir. 1998); *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991).

 If the plaintiff demonstrates the elements of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's different treatment. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. If the defendant makes such an articulation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's explanation was only a pretext concealing a racially discriminatory motivation. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *King v. General Elec. Co.,* 960 F.2d 617, 621–22 (7th Cir.1992). At summary judgment, a plaintiff cannot merely rest on his allegations, he must offer evidence from which a jury could reasonably conclude that the employer's decision was, in reality, motivated by racial animus. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–69 (7th Cir.1995); *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir. 1994).

Here, based on the material undisputed facts, the Court concludes that Plaintiff cannot make out a *prima facie* case of discrimination, and, even assuming *arguendo* that he could, Plaintiff has failed to show that there is any material issue of fact on EJ & E's articulated legitimate business reasons for its decisions. Accordingly, summary judgment is proper in this case.

### B. *There Is No Material Issue of Fact On Plaintiff's Claim That He Was Paid A Lower Rate Of Pay Allegedly Because Of His Race.*

In paragraph 1 of Plaintiff's first and only cause of action in his Complaint,

Plaintiff alleges that he was hired at 75% of pay and a white co-worker was hired at 100%. In discovery, Plaintiff identified the white co-worker as John DeYoung. Pl. Dep. at 25. The undisputed record evidence shows that other employees hired when he was, including white, black and Hispanic employees, were paid at 75%. Pl.Dep. 26–28. While Mr. DeYoung was paid at 100%, he was an experienced welder and, therefore, is not similarly situated to the Plaintiff.

### 1. Plaintiff Has Failed To Show That He Can Establish a Prima Facie Case.

■ To make out a *prima facie* case of discrimination, Plaintiff must point to a similarly situated person not in the protected class that was treated more favorably than he. *See, e.g., Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 542 (7th Cir.1987) (explaining that "for [a black plaintiff] to succeed in showing racial animus through a disparate treatment analysis, he had to show at least some evidence that the grievances of similarly situated white employees were treated differently than was his grievance."); *see also Morrow*, 152 F.3d at 559 (affirming summary judgment). An employee is similarly situated if all of "the relevant aspects of his employment situation were nearly identical" to his alleged comparator. *Blackwell v. Bob Evans Farms, Inc.*, No. 94–7703, 1996 WL, 406654, at *9–10, 1996 U.S. Dist. LEXIS 10044, at *9–10 (N.D.Ill. Jul. 16, 1996) (granting summary judgment in race and sex discrimination case because alleged comparator was not similarly situat-

ed to plaintiff); *Ricks v. Riverwood Int'l. Corp.*, 38 F.3d 1016, 1019 (8th Cir.1994).

■ Here, the undisputed record evidence shows that the CBA provided that EJ & E was to pay an employee at 75% of the relevant rate unless he or she had prior relevant experience. The evidence is undisputed that Plaintiff lacked any prior relevant experience. Pl.Dep. at 12. On the other hand, Mr. DeYoung, to whom Plaintiff compares himself, was an experienced welder. Chambers Aff. ¶ 2; Pl.Dep. at 23–24. The evidence is further undisputed that EJ & E hired Mr. DeYoung at 100% of the rate because of his prior welding experience. Chambers Aff. ¶ 2. The Court, therefore, concludes based on the undisputed material record evidence that Mr. DeYoung is not similarly situated to Plaintiff and, therefore, Plaintiff has failed to make out a *prima facie* case.[11] *See Timms v. Frank*, 953 F.2d 281, 286–87 (7th Cir.1992) (recognizing that work histories are relevant to employee comparisons for purposes of evaluating disparate treatment claims).

### 2. Even Assuming Arguendo That Plaintiff Were Similarly Situated To DeYoung, The Court Concludes That There Is No Material Issue Of Fact On EJ & E's Articulated Business Reason For Paying DeYoung 100%.

■ EJ & E has articulated a reason for paying Mr. DeYoung at 100% of the applicable rate and for paying Plaintiff only 75% of the applicable rate—namely their relative experience and the CBA. The record evidence is that EJ & E, in accord with the CBA, paid Plaintiff only 75% of

11. The evidence is further undisputed that other inexperienced employees hired at the same time as Plaintiff, including white employees, were paid the same as Plaintiff. Pl. Dep. at 21, 26–28 (stating that Mr. DeYoung was the only employee EJ & E hired at 100% of the Track Laborer rate and that the other white, black and hispanic employees were paid at 75%). These employees are the similarly situated employees who are identical in "the relevant aspects of [plaintiff's] employ-

ment situation." *Blackwell*, No. 94–7703, 1996 WL 406654, at *9, 1996 U.S.Dist. LEXIS 10044, at *10. The law does not allow Plaintiff selectively to ignore these similarly situated employees and chose Mr. DeYoung, an experienced welder, as his comparator. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 646–47 (3d.Cir.1998) (affirming summary judgment in sex discrimination case and explaining plaintiff cannot pick and chose comparators).

the Track Laborer rate because he lacked prior relevant experience. Likewise, consistent with the CBA, EJ & E paid Mr. DeYoung a starting salary equal to 100% of the applicable rate. Chambers Aff. ¶ 2; See Pl.Dep. at 23–24 (stating: "I really don't understand why they paid him 100 percent and paid no one else 100 percent" and further stating: "If he was hired at 100 percent, who knows why. The understanding me and Jim DeYoung had about why he was hired at 100 percent [was] because he was brought in as a welder."). Plaintiff does not challenge the CBA which, the record evidence shows, EJ & E followed. See, e.g. Babrocky v. Jewel Food Co., 645 F.Supp. 1396 (N.D.Ind.1986) (Sharp, J.) (granting summary judgment in sex discrimination case where employer and union followed provisions of non-discriminatory collective bargaining agreement); 42 U.S.C. § 2000e–2(h) (providing "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of an intention to discriminate because of race ...."). [12]

### C. Based On The Undisputed Material Facts, The Court Concludes That EJ & E Is Entitled To Summary Judgment On Plaintiff's Claim That He Was Not Promoted.

In paragraphs 2, 4 and 5 of Plaintiff's first and only cause of action in his Complaint, Plaintiff alleges that he was denied a promotion to foreman. In discovery, the bids of Plaintiff were identified specifically. See Pl.Dep. Exs. 1, 5, 6, 7 & 8. In each case, Plaintiff has failed to show that he can establish a prima facie case of discrimination and, even assuming arguendo that he could, Plaintiff has failed to establish any genuine issue of material fact concerning Defendant's articulated reasons for not awarding him the promotion.

### 1. Plaintiff Has Failed To Show That He Can Establish A Prima Facie Case.

To make out a prima facie case for the denial of the Track Foreman positions, Plaintiff must prove, inter alia, that he was qualified for the positions. See, e.g., Morrow, 152 F.3d at 561; Geier v. Medtronic Inc., 99 F.3d 238, 243 (7th Cir.1996) (affirming summary judgment in sex and pregnancy discrimination case where plaintiff failed to show she was qualified for the job).

The record evidence goes undisputed that, when Plaintiff attempted to qualify for the Road Track Foreman and Track Foreman positions, he lacked the year of experience supervising restorations and renewals of track under traffic conditions that is mandated under the FRA Track Safety Standards. Pl.Dep. at 12. Accordingly, Plaintiff was not qualified for the positions and cannot make out a prima facie case.

### 2. Even Assuming Arguendo that Plaintiff Could Make Out A Prima Facie Case, There Is No Material Issue Of Fact On EJ & E's Articulated Business Reasons For Not Promoting Plaintiff.

### a. The Spring 1995 Track Foreman Training Period.

Less than four months after Plaintiff became a track laborer, he bid on a Track Foreman position. All of the employees who bid on the April 21, 1995 bulletined Track Foreman position, including Plaintiff, lacked the one year of supervisory experience necessary to qualify for the position under the FRA Track Safety Standards. Rather than abolish the position, EJ & E awarded the position to starting Track Laborer. Pl.Dep. at 56–60.

---

**12.** Plaintiff never filed a grievance under the CBA for the salary rate he was paid as a

Plaintiff—the most senior bidder who spoke English fluently and was certified to release a track warrant—so that he could gain experience as a foreman. Chambers Aff. ¶ 6.

Mr. Elledge ultimately disqualified Plaintiff for that Track Foreman position on June 2, 1995 because Plaintiff lacked the requisite knowledge and experience for the position and because he lacked the one year of supervisory experience required under the FRA Track Safety Standards to permanently qualify for the position. Elledge Aff. ¶ 5. Plaintiff has failed to raise a genuine issue of material fact concerning Defendant's reasons for disqualifying him from the position.[13]

### b. *Plaintiff's Second Training Period.*

Plaintiff bid on a Track Foreman position on November 10, 1995. The undisputed record evidence is that EJ & E awarded him the position because there were no bidders with the required supervisory experience under the FRA Track Safety Standards and Plaintiff was the most senior person with the other two minimum qualifications. Chambers Aff. ¶ 8. The evidence is further undisputed that this position was abolished (along with the positions of other white, black and hispanic employees) as a result of a winter shift change that EJ & E made in accordance with the CBA. Pl.Dep. at 99–101. Plaintiff has failed to identify any evidence that these changes were a pretext for discrimination.

Consistent with the CBA, EJ & E rebulletined the positions on December 8, 1995. Pl.Dep. Exhibit 6. Plaintiff bid on but was not awarded any of three Track Foreman positions that EJ & E bulletined. In accordance with the CBA, EJ & E awarded those three positions to the three most senior candidates with the minimum qualifications necessary to fill the positions. Plaintiff has failed to identify any evidence that the bids were awarded other than in accordance with seniority provisions of the CBA or that race played any role in the award of the bids.

On March 8, 1998, Plaintiff again bid on and was awarded a Track Foreman position. Plaintiff was awarded the position because none of the candidates had the required year of supervisory experience and Plaintiff was the next most senior employee that spoke English fluently and was certified to release a track warrant. Chambers Aff. ¶ 9; Pl.Dep. Exhibit 7. Effective March 26, 1998, however, Plaintiff's position and others were abolished because EJ & E moved back to its summer shifts. Pl. Exhibit 8. Both whites and blacks were affected by the abolishment of these Track Foreman positions. Pl.Dep. 115–16.

Plaintiff bid on and was awarded a Track Foreman position effective March 26, 1995. Pl.Dep. Exhibit 8. The thirtieth day Plaintiff trained as a Track Foreman (during his second qualification period)

---

**13.** The Court further notes that the same person that disqualified Plaintiff from the position in June 1995—Steve Elledge—also hired Plaintiff just a few months earlier. As various courts have recognized, a supervisor who is willing to hire an employee of a certain class is unlikely to deny that employee a promotion because he or she is a member of that class. *See, e.g., Brown v. CSC Logic,* 82 F.3d 651, 658 (5th Cir.1996) (affirming summary judgment in ADEA case and applying same actor inference); *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) (affirming judgment for employer in sex discrimination case and recognizing same actor inference "applies regardless of whether the class is age, race, sex, or some other protected classification"), *cert. denied,* 516 U.S. 1078,

116 S.Ct. 785, 133 L.Ed.2d 736 (1996); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993) (affirming summary judgment in ADEA action and applying same actor inference); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992) (affirming directed verdict and holding no age discrimination occurred where employee was fired for violating company policy by same persons who had hired employee two years earlier); *Proud v. Stone,* 945 F.2d 796, 797–98 (4th Cir.1991) ("[I]n cases where the hirer and firer are same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

was March 24, 1996. Reichle Aff. ¶ 7. Plaintiff still lacked the experience, knowledge and training necessary to qualify for the position and he lacked the one year of supervisory experience required under the FRA Track Safety Standards. To meet the deadlines in the CBA (requiring EJ & E to disqualify employees within seven calendar days of the thirtieth day an employee trained for the position), Mr. Elledge disqualified Plaintiff on March 29, 1996. CBA, ¶ Rule 29. These reasons for disqualifying Plaintiff go undisputed. Elledge Aff. ¶ 6.

### c. The June 2, 1995 Road Track Foreman Bid.

Plaintiff bid on a June 2, 1995 bulletined Road Track Foreman position. He was not awarded this position. Plaintiff was not awarded this position because he was not the most senior bidder with the necessary qualifications. Plaintiff lacked a year of railroad experience, let alone the FRA Track Safety Standards required year of supervising restorations and renewals of track under traffic conditions. The candidate that was awarded the position (Sabor) was the most senior candidate with all of the qualifications for the position. Chambers Aff. ¶ 7. Further, Sabor had worked for another railroad as an FRA Track Safety Standards qualified Track Foreman. Chambers Aff. ¶ 7. For this reason, Sabor was awarded the position over Plaintiff. *Id.*

Plaintiff has failed to raise any issue of material fact concerning the award of this position to Sabor or that race played any role in this award of the position to Sabor. Plaintiff has failed to produce any evidence that the award of the bid to Sabor was a pretext for discrimination.

### D. There Is No Material Issue Of Fact On Plaintiff's Claim That He Was Not Trained For The Track Foreman Position.

█ In paragraph 3 of Plaintiff's first and only cause of action in his Complaint, Plaintiff alleges that he "was not allowed to attend a formal training program that was provided to white co-workers." In discovery, Plaintiff identified three employees—Mr. Malia (white), Mr. Flores (Hispanic) and Mr. Hilley (white)—as attending a formal training program. It is undisputed, however, that these employees were provided such Track Foreman training in 1990 and 1992—long before Plaintiff arrived at EJ & E. Pl.Dep. at 36, 38–39. Plaintiff has admitted that he is not aware of any employees with seniority comparable to Plaintiff who were provided such training. Pl.Dep. at 39, 165–66. Further, Plaintiff has admitted that he is not aware of any training program for Track Foreman while he was employed. *Id.* Accordingly, there are no employees similarly situated to Plaintiff who were treated more favorably, and Plaintiff cannot make out a *prima facie* case.

Moreover, Plaintiff's claim that he was denied this training is clearly unfounded. The evidence is undisputed that EJ & E did not offer the training to Plaintiff or anyone else after it had eliminated the formal in-house Track Foreman training program in 1992. Chambers Aff. ¶ 11. No employees during Plaintiff's tenure with EJ & E have been provided this training. *Id.;* Pl.Dep. at 39, 165–66. This articulated reason for not providing Plaintiff (or any of the other white, black and Hispanic employees hired after 1992) with this training goes undisputed.

AND NOW, this 31 day of March, 1999, upon consideration of EJ & E's Motion for Summary Judgment and the briefs and record materials filed in connection with that Motion and Plaintiff's response, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. The Court hereby grants EJ & E motion for summary judgment pursuant to Rule 56 on Plaintiff's remaining claims in this lawsuit and denies EJ & E motion for attorney's fees. The Clerk shall mark this case closed.